JOHN SHEEHAN v. BRIDGET ALLEN *et al.*

No. 13,126.   (74 Pac. 245.)

SYLLABUS BY THE COURT.

1. PARTITION — *Necessary Parties.* The general creditors of the estate of a deceased person are not proper parties to an action between the heirs of the decedent for the partition of real estate left by him, and only under exceptional states of fact should his administrator be joined.

2. CONVEYANCE — *Insane Grantor— Offer of Restitution of Consideration.* In an action to set aside a deed claimed to have been executed without sufficient mental capacity on the part of the grantor to convey, it is not necessary to make an offer to return the consideration of the deed, or to reimburse the grantee for outlays by way of such consideration, when the payment and furnishing of such consideration are denied by the parties assailing the transfer, and the good faith of the grantee in procuring the deed is impugned.

3. ATTORNEY AND CLIENT—*Privileged Communication.* The payment of a retainer or fee is not indispensible to the formation of the relation of attorney and client within the meaning of the statute concerning the competency of witnesses to testify; and if a person consults an attorney at law for the purpose of obtaining legal advice and assistance upon matters he deems of importance, and such attorney permits the consultation to proceed and accepts confidences relating to such matters, and obtains information regarding them, the relation of attorney and client is thereby established between the parties, the communication so made and the advice given thereon are privileged, and the attorney is incompetent to testify to them without his client's consent.

4. ——— *Insane Client.* The rule announced in paragraph 3 above prohibits an attorney from disclosing privileged matter as a basis for an opinion that the client was of unsound mind at the time of the consultation.

5. ——— *When Attorney may Testify.* An attorney may express his opinion regarding the sanity of his client from observations made in common with others in a non-professional capacity, or from facts which did not come to his peculiar knowledge because his professional guidance had been sought or extended.

Error from Miami district court; JOHN T. BURRIS, judge.   Opinion filed November 7, 1903.   Reversed.

*Frank M. Sheridan*, for plaintiff in error.

*N. W. Wells*, and *E. J. Sheldon*, for defendants in error.

The opinion of the court was delivered by

BURCH, J. : The defendants in error, Bridget Allen and Mary Cunningham, commenced an action against John Sheehan, the plaintiff in error, and their co-defendants in error, to partition real estate which had been the property of Richard Collins, then deceased. It was alleged that all the parties to the suit were tenants in common of the land by virtue of being heirs of the former owner. John Sheehan answered claiming sole ownership and possession of one tract described in the petition, under a deed from Richard Collins, executed and delivered in consideration of board and washing to be furnished, and stated sums of money to be paid to him during the remainder of his lifetime. The plaintiffs replied that the deed mentioned was invalid because at the time of its execution the grantor was of unsound mind, and charged John Sheehan with fraud and undue influence in procuring it.

After a trial judgment was rendered for the plaintiffs, the court holding the deed to John Sheehan to be null and void, "for the reason that at the time of the execution of said deed, and for a long time prior thereto the said Richard Collins was mentally incapable of conveying said land, because at the date of the execution of said deed, and for a long time prior thereto, he was laboring under an insane delusion as to said land described in the deed set out in the answer of said defendant John Sheehan." A motion for a new trial, duly filed, having been overruled, this

proceeding in error was commenced to reverse the judgment of the district court.

An objection was made to the introduction of any testimony under the petition because it failed to state sufficient facts to constitute a cause of action. It did not allege that plaintiffs were in possession of the real estate sought to be partitioned, and contained no demand for the possession of any of it. Under the authority of *Denton v. Fyfe*, 65 Kan. 1, 68 Pac. 1074, it was, therefore, defective.

The petition alleged the appointment of an administrator of the estate of Richard Collins, and then contained an allegation that it would not be necessary to sell any of the real estate to pay the debts of the deceased, or funeral or other expenses. As against the objection to the introduction of any testimony this allegation should be liberally construed to mean that personal property existed belonging to the estate of the decedent amply sufficient to pay all his debts and all costs of administration, on account of which it would not be necessary to sell any of the real estate for that purpose. So construed the allegation made was sufficient upon that subject. (*Sample v. Sample*, 34 Kan. 73, 8 Pac. 248.) Under the allegation referred to the general creditors of the estate of Richard Collins, and his administrator, as such, had not, and never could have, any interest in his real estate or right to its appropriation. Therefore, it was not necessary that the petition refer to them at all. Under no circumstance should general creditors be made parties in an action of partition, as plaintiff in error suggests, and it is only under very exceptional states of fact that the administrator can be joined.

The reply was attacked by several motions. The various defenses contained in it were separately stated

and separately numbered, and, though some of the allegations relating to fraud and undue influence were slightly indefinite in respect to some details, the reply was sufficient in both form and substance.

John Sheehan contended that if the deed was invalid he was nevertheless entitled to reimbursement for advancements made to Richard Collins in his lifetime, by way of consideration for it; and that because no tender or offer to submit to the allowance of recompense appeared in the pleadings he was entitled to judgment.   This question, however, was one which could not be decided upon the pleadings because John Sheehan was charged with fraud and undue influence, and all performance of the conditions of the deed was denied.. In *Gribben, Guardian v. Maxwell*, 34 Kan. 8, 7 Pac. 584, 55 Am. Rep. 233, it was said :

"We think, however, the weight of authority favors the rule that where the purchase of real estate from an insane person is made, and a deed of conveyance is obtained in perfect good faith, before an inquisition and finding of lunacy, for a sufficient consideration, without knowledge of the lunacy, and no advantage is taken by the purchaser, the consideration received by the lunatic must be returned, or offered to be returned, before the conveyance can be set aside at the suit of the alleged lunatic, or one who represents him."

If a state of affairs existed making that doctrine applicable to this controversy, only the proof could disclose it.

On the trial a number of non-expert witnesses were permitted to express opinions concerning the mental capacity of Richard Collins to execute the Sheehan deed.   Two of these were attorneys at law, and upon examination as to the basis of their opinions disclosed fully the details of transactions and conversations in which Richard Collins had consulted them as attor-

neys. One of these attorneys justified his disclosure as follows:

"Ques. He consulted you as an attorney, did he not? That is your business? Ans. Yes, sir; that was my business.

"Q. And he employed you to ascertain about the patents on his lands, did he not? A. Yes, sir; he did.

"Q. And you consulted with him about his plan of having Sheriff Butts take charge of his land? A. Well, I did n't consult with him nor advise with him about that. He simply came and talked to me about it and told me about it. The fact is that after I discovered the condition he was in I never accepted any fee from him for what I had done in getting the patent or the writing of letters, or the investigation in regard to the lands he claimed from his wife; and I did not consider that the relation of attorney and client existed at all, for I did n't consider that he was capable or competent to make that sort of a contract.

"Q. Well, if he had been, and had these talks with you, you would have considered the relation of attorney and client to have subsisted, would n't you? A. Possibly."

The other attorney who had at one time conducted some litigation for Richard Collins, and who, about the time of some of the transactions revealed, was in the receipt of fees from him for legal services, made the following explanation:

"Ques. He came to your law office, did he? Ans. Yes, sir; O, I would occasionally meet him here. I remember of meeting him twice on the road, but generally at my law office.

"Q. And he came there to consult you as an attorney? A. No, sir; he never paid me any attorney fee, nor I never asked him for any, and never intended to charge him any.

"Q. He came there, I presume, with the idea that he was counseling with you? A. I think so; yes, sir, I think that was his idea.

"Q. And you had these talks and conversations throughout that time about these matters?   A.  Yes."

The statute relating to the competency of witnesses in cases of this character is as follows :

"The following persons shall be incompetent to testify :   .   .   .   Fourth, An attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the client's consent."   ( Gen. Stat. 1901, § 4771.)

Under this statute the relation of attorney and client must exist to make the communication privileged.  But the payment of a fee is not the test of that relation.  In the case of *The State v. Herbert*, 63 Kan. 516, 519, 66 Pac. 235, 236, it was said :

" While the payment of a retainer or fee is the best evidence that the relation of attorney and client exists, such payment is not absolutely essential.   If an attorney is consulted in his professional capacity, and he allows the consultation to proceed, and acts as adviser, the fact that no compensation was paid, or that the consultation was ended  and the relation broken, would not remove the seal of secrecy from the communications made."

In the case of *Denver Tramway Co. v. Owens*, 20 Colo. 107, 128, 36 Pac. 848, 855, the rule was stated as follows :

"If a person, in respect to his business affairs or troubles of any kind, consults with an attorney in his professional capacity with the view to obtaining professional advice or assistance, and the attorney voluntarily permits or acquiesces in such consultation, then the professional employment must be regarded as established ; and the communication made by the client or advice given by the attorney under such circumstances is privileged.

"An attorney is employed—that is, he is engaged in his professional capacity as a lawyer or counselor—when he is listening to his client's preliminary state-

ment of his case, or when he is giving advice thereon, just as truly as when he is drawing his client's pleadings, or advocating his client's cause in open court. It is the consultation between attorney and client which is privileged, and which must ever remain so, even though the attorney, after hearing the preliminary statement, should decline to be retained further in the cause, or the client, after hearing the attorney's advice, should decline to further employ him.''

The same principle was announced in the case of *Major and William Alderman, plaintiffs in error v. The People, defendants in error*, 4 Mich. 414, 9 Am. Dec. 321, the syllabus of which reads :

''A communication made to an attorney, under the impression that the attorney had consented to act as such for the party making it, is privileged, but it must be made to the attorney as the legal adviser of the party, and for the purpose of obtaining his legal opinion upon some legal right or obligation.''

In this case Richard Collins twice sought out an attorney for the purpose of obtaining legal advice and assistance upon matters he deemed of importance. In each case the attorney consulted accepted his confidences as an attorney at law engaged in the practice of his profession, and obtained from him information imparted upon the faith of that relation. One of these attorneys conceded that Richard Collins acted upon a belief in the existence of such relation. The other conceded that he himself, at the time, acted in good faith upon such a belief to the extent of procuring a patent, writing letters, and investigating a title. Therefore, neither one will be allowed to profane the relation after his client's death. Besides this, it would be a strange procedure which would permit a witness to testify outright that he believed a person to be insane at a certain time for the purpose of removing a bar to his relating certain facts without

which he would not be qualified to speak at all upon the question of the person's sanity. The very question at issue could not be conclusively decided by the witness in order to render him competent to speak upon it.

If the witnesses had founded their opinions upon observations made in common with others in a nonprofessional capacity, or upon facts which did not come to their peculiar knowledge because their professional opinions and guidance had been sought, they might have shown themselves to be competent to testify. Thus, in the case of *Johnson v. Daverne*, 19 Johns. 135, 10 Am. Dec. 198, the question was as to the competency of an attorney to testify to his client's handwriting. The court said:

"The questions to the attorney and counsel were not pushed far enough. If he knew nothing but what his client had communicated to him, he could not be compelled to disclose that; but if he became acquainted with his client's signature, in any other manner, though it was subsequent to his retainer, he was bound to answer; for an attorney and counsel may be questioned, as to a collateral fact within his knowledge, or as to a fact which he may know, without being entrusted with it as an attorney in the cause."

Likewise, in *State v. Fitzgerald*, 68 Vt. 125, 34 Atl. 429, it was determined that under certain circumstances a lawyer could testify regarding his client's intoxication. The following is from the opinion:

"Counsel on both sides, in their briefs, have treated the knowledge that the attorney obtained in respect to the respondent's condition as privileged. We think, however, it cannot be so held. It does not appear that Mr. Cushman learned, or had an opportunity to learn, any fact in respect to the respondent's condition that was not observable by Buckley and by all other persons who saw him during the time of his alleged

intoxication. No fact came peculiarly within his knowledge on account of his relation to the respondent as his counsel. This being the case, he was not privileged from testifying to what he observed of the respondent's condition.''

In this case, however, it is quite clear the witnesses would not have learned the major portion of the facts which they disclosed, or held the most important conversations which they repeated on the witness stand, had they not undertaken to consult with, and act for, Richard Collins as his attorneys. This being true, they were incompetent to testify as to such facts and conversations. Without these they were not qualified to speak upon the question of Richard Collins's sanity, and since their observations should have preceded their opinions (*Baughman v. Baughman*, 32 Kan. 538, 4 Pac. 1003), their testimony should have been excluded.

Some questions relating to insane delusions are discussed in the briefs. In the absence of special findings of fact it cannot be determined what view the trial court took of the law upon that subject involved in the trial, and a discussion of such questions is, therefore, unwarranted.

The judgment of the district court is reversed, and the cause remanded for a new trial.

All the Justices concurring.