UNION PACIFIC RAILROAD COMPANY v. FRANK DAY,
*by his Father, John F. Day, as his Next Friend.*

No. 13,540.　(75 Pac. 1021.)

SYLLABUS BY THE COURT.

EVIDENCE—*Attorney and Client—Privileged Communication.*
Where a person communicated to an attorney facts in detail, and
the communication became important as evidence against the
person making it in an action subsequently commenced in which
he was a party, and the attorney, without the consent of the
person making such communication, was called by the adverse
party as a witness to testify as to the communication so made,
and the court excluded the testimony of the witness in reference
thereto as being a privileged communication, *held*, error, where
it appears that the advice of the attorney was gratuitously given,
that it was not known that the person consulted was an attorney,
and that the communication was not made under the seal of pro-
fessional confidence.

Error from Osborne district court; R. M. PICKLER,
judge. Opinion filed March 12, 1904. Reversed.

*N. H. Loomis, R. W. Blair,* and *H. A. Scandrett,* for
plaintiff in error.

*Smith & Nicholas,* for defendant in error.

The opinion of the court was delivered by

ATKINSON, J.: Frank Day, a minor, nineteen years
of age, by his father and next friend, on February 19,
1902, filed his petition in the district court of Osborne
county against the Union Pacific Railroad Company
to recover damages for personal injury sustained by
him and resulting in the loss of his left foot. On the
night of July 20, 1901, at North Platte, Neb., plain-
tiff was attempting to steal a ride on the top of a bag-
gage-car forming a part of one of defendant's east-bound
passenger-trains. As the train was slowly passing
from the station upon a siding to clear the main track

for an approaching west-bound train, the front brake-man ordered the plaintiff off the car, and in getting off before the train came to a stop he fell to the track between the baggage-car and the tender. Plaintiff's left foot was crushed beneath the moving wheels, and it was amputated above the ankle-joint.

The petition of plaintiff charged that defendant, by its brakeman, was guilty of wilful, wanton, malicious and reckless conduct; that said brakeman, with a club in his hand, in an angry, threatening manner, cursed plaintiff and threatened to club him off the car while the same was moving rapidly; that plaintiff, being much alarmed, and believing that he was in danger of bodily harm from the brakeman, endeavored to get down from the top of the car, and in doing so fell, sustaining the injury complained of. Defendant answered by general denial, an allegation of negligence on the part of plaintiff, and that plaintiff was at the time a trespasser upon the train of defendant, stealing a ride. The jury returned a verdict for plaintiff in the sum of $2000, upon which judgment was entered. Defendant brings error.

The main controversy upon the trial was whether or not the conduct of the brakeman toward plaintiff was wilful, wanton, malicious, and reckless, as charged in the petition. Upon this question the only direct testimony was that of plaintiff and the brakeman. The testimony of plaintiff tended to support the averments of his petition. The testimony of the brakeman was to the effect that he had no club with him; that he did not curse or threaten plaintiff; that he merely told plaintiff that he could not ride there and must get off; that the train was at the time stopping on the siding, and had about stopped. The testimony disclosed the fact that, when plaintiff was injured, he

was taken at once to the county poorhouse, where his foot was amputated, and that he remained there for about six weeks. There was evidence offered tending to show that at the time he was injured, and also while at the poorhouse, he related to several persons how the injury occurred. Among others was one James M. Ray, who was a justice of the peace in the city of North Platte, and also poormaster. As such poormaster, he had charge of the poorhouse, admitting and discharging persons to and from the institution. Defendant took his deposition. The testimony of Mr. Ray in this deposition disclosed the fact that he was a lawyer and had practiced law in North Platte since 1889. He testified to the following conversation between himself and plaintiff at the poorhouse :

"Ques. Did he ever tell you how the accident occurred? Ans. Yes.

"Q. Please state what he told you about it. A. The first thing he said about it was these words : 'I ought to have a claim against the railroad.' I told him if he would tell me how he got hurt probably I could help him as to whether or not he had a claim. I asked him how it was he got hurt; he answered : 'I was coming down off the top of a car where the vestibule is; you know there is a vestibule on one car and none ahead to meet it, and that left an opening, and I fell down where the vestibule is.' I next asked him why he was getting off the car while it was in motion. He answered : 'The brakeman made me get off.' I asked him : 'How did the brakeman make you get off?' He gave me no answer. I asked him : 'Where was you when the brakeman saw you?' He answered : 'On top of the car.' I asked him what the brakeman said, and he answered in these words : 'Come down off there.' I said : 'Did he say anything else to you?' He answered, 'No.' I asked, 'Did he threaten you?' He answered, 'No.' I asked, 'Did he have a stick or anything in his hand?' He answered, 'No.' I asked, 'Did he touch you at

Railroad Co. v. Day.

at any time?'  He answered, 'No.'  I asked him:
'How was it you got under the wheels?'  He answered that he was coming off the top of the car by the vestibule and he fell down through the opening. I asked him if there was anybody with him that he knew.  He answered: 'There was a hobo that I was with up the road was there with me, and he got down all right, but when I came down I fell under the car.'  I asked him for a description of that hobo. He described the man, and that is all the conversation we had."

The court, upon the trial, over the exception of defendant, excluded this testimony from the jury as being a privileged communication between attorney and client.

"The following persons shall be incompetent to testify:  .  .  .  Fourth.  An attorney, concerning any communications made to him by his client in that relation, or his advice thereon, without the client's consent."  (Gen. Stat. 1901, § 4771.)

Under this statute, the relation of attorney and client must exist to make the communication privileged.  In the case of *The State v. Herbert*, 63 Kan. 516, 519, 66 Pac. 236, Mr. Justice Johnston, in delivering the opinion of the court, said:

"While the payment of a retainer or fee is the best evidence that the relation of attorney and client exists, such payment is not absolutely essential.  If an attorney is consulted in his professional capacity, and he allows the consultation to proceed, and acts as adviser, the fact that no compensation was paid, or that the consultation was ended and the relation broken, would not remove the seal of secrecy from the communications made."

The case of *Sheehan v. Allen*, 67 Kan. 712, 74 Pac. 245, treats this subject quite exhaustively.

The witness Ray also testified that he had never

been employed or retained by plaintiff; that he advised with him gratuitously, and was himself interested only to see if there was some person who could be held liable to the county for the expense of caring for plaintiff. There is nothing in the record to show that plaintiff had any knowledge whatever that Mr. Ray was an attorney, or that he was by plaintiff being consulted as an attorney. It cannot, then, well be said that there existed between the witness and plaintiff the relation of attorney and client, or that the communication was made under the seal of professional confidence. The portion of the deposition excluded was material to defendant. The court committed error in excluding it.

Complaint is made by defendant of the eighth instruction given by the court, which reads:

"If a person gets on a railroad-car, in order to ride without payment of fare, and without consent of the person in charge of the train, he may be ejected from the car prudently and in such a manner as not unnecessarily to endanger his personal safety; but if reasonable prudence and care are not exercised, and the person is thereby injured, the company will in such case be liable for such injury."

This instruction does not correctly state the law as to the liability of railroads in ejecting trespassers from trains. The rule of liability in such cases is, that a railroad company is liable in ejecting trespassers from its trains when in doing so it is guilty of wilful or malicious acts amounting to wanton negligence. (*O'Banion v. Railway Co.*, 65 Kan. 352, 69 Pac. 353; *Handley v. Railway Co.*, 61 id. 237, 59 Pac. 271; *U. P. Rly. Co. v. Mitchell*, 56 id. 324, 43 Pac. 244; *Campbell v. K. C. Ft. S. & M. Rld. Co.*, 55 id. 536, 40 Pac. 997; *A. T. & S. F. Rld. Co. v. Gants*, 38 id. 608, 17 Pac. 54, 5 Am. St. Rep.

780; *K. C. Ft. S. & G. Rld. Co. v. Kelly*, 36 id. 655, 14 Pac. 172, 59 Am. St. Rep. 596.)

The law was correctly stated by the court in other instructions given ; but even then the instruction complained of is objectionable in that it might mislead the jury, and is justly the subject of criticism.   While we would not feel disposed to reverse the case upon the giving of this instruction, given, as it was, in connection with other instructions correctly stating the law, it should not again be given upon a second trial of this case.   Error is also assigned in the refusal of the court to give instructions asked, and of the refusal of the court to enter judgment for defendant on the special findings of the jury.   The instructions given by the court, aside from instruction No. 8, appear fairly to state the law of the case.

The defendant is not entitled to judgment on the special findings.   There were in all fifty-two assignments of error.   We do not deem the assignments not already referred to of sufficient importance to warrant a special reference to them at this time.

For error in excluding the testimony of the witness Ray, the judgment of the court below is reversed, and the case remanded for a new trial.

All the Justices concurring.