Matthias, J.
This ease involves an interpretation of Section 2317.02, Revised Code, which reads in part as follows:
“The following persons shall not testify in certain respects:
“(A) An attorney concerning a communication made to him by his client in that relation or his advice to his client; * * * but the attorney * * * may testify by express consent of the client * * * or if the client # * * be deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of such deceased client * * # and if the client * * * voluntarily testifies, the attorney * * * may be compelled to testify on the same subject # *
Two basic questions are raised in this case.
First: Are communications made to an attorney preliminary to his actually accepting employment privileged, or, in other words, when does the attorney-client relationship begin in relation to the statute prohibiting the disclosure of privileged communications ?
Second: Can an attorney testify as to the mental condition of his client based upon observations made by the attorney during the attorney-client relationship?
The object and basis of the rule relating to privileged communications are well set forth in In re Klemann, 132 Ohio St., 187, 5 N. E. (2d), 492, 108 A. L. R., 505, where Judge Day, at page 190, stated:
“The philosophy behind exemption from disclosure of privileged communications is well stated in Anderson v. Bank of British Columbia (1876), Chancery, L. R. 2 Ch. D., 644, 649. The court, speaking through Jessel, M. R., said:
“ ‘The object and meaning of the rule is this: That as, by reason of the complexity and difficulty of our law, litigation can only be properly conducted by professional men, it is absolutely necessary that a man, in order to prosecute his rights or to defend himself from an improper claim, should have recourse to the assistance of professional lawyers, and it being so absolutely necessary, it is equally necessary, to use a vulgar phrase, *121 that he should he able to make a clean breast of it to the gentleman whom he consults with a view to the prosecution of his claim, or the substantiating of his defense against the claim of others; that he should be able to place unrestricted and unbounded confidence in the professional agent, and that the communications he so makes to him should be kept secret, unless with his consent (for it is his privilege, and not the privilege of the confidential agent), that he should be enabled properly to conduct his litigation. That is the meaning of the rule.’ ”
Clearly, the purpose of this rule is to permit complete freedom of disclosure by a client to his attorney without fear that any facts so disclosed will be used against him.
Does such protection extend to a preliminary conference between a person and his prospective attorney?
Obviously, a person must divulge the facts pertaining to his prospective case to the attorney prior to the attorney’s actual acceptance of the employment. After hearing the facts, an attorney may or may not accept the employment. It very well may be a type of case the attorney does not handle or it may be one about which he has a strong moral feeling or one which he thinks has no legal validity; however, irrespective of the reason, the attorney has the right to accept or reject the employment as he sees fit. But in order to make such decision, the attorney must have the facts.
In order for a person to have complete freedom in seeking the services of an attorney, it necessarily follows that disclosures' made by such person to an attorney with a view of enlisting the attorney’s services in his behalf fall within the rule making communications between an attorney and his client privileged. Sheehan v. Allen, 67 Kan., 712, 74 P, 245. See 8 Wigmore on Evidence (3 Ed.), 587, Section 2304. To hold otherwise would so weaken the rule as to make it useless in many instances and, therefore, would discourage a person from seeking the services of an attorney which he might sorely need.
In other words, communications made by a person to an attorney with the view of retaining the attorney to act on his behalf constitute privileged communications. It might well be said that a tentative attorney-client relationship exists during such period.
*122 We come now to a consideration of the second question raised in this case. Does the term, “communications,” extend to matters which an attorney observes in relation to the mental condition of his client, or may an attorney testify as to his conclusion as to the mental condition of his client based upon observations the attorney made during the attorney-client relationship?
It must be pointed out that the law of Ohio is definite as to the duration of the attorney-client privilege. Under our decisions it has been definitely established that such privilege survives the client, that it does not disappear at the death of the client. Swetland v. Miles, 101 Ohio St., 501, 130 N. E., 22.
Although the term, “communications,” may in the lay sense be confined to oral or written matters, legally it necessarily must go much further. Communication may well be by act or sign. Words themselves are not in any way essential to the act of communication. Ex parte McDonough, 170 Cal., 230, 149 P, 566, L. R. A. 1916C, 593, Ann. Cas. 1916E, 327. The trained eye of the physician may tell him a great deal more than the words of the patient. The word, “communication,” means “to make known,” and knowledge may be transmitted not only by words but also by observation of the general circumstances or conditions surrounding a person or an object. Ausdenmoore et al., Exrs., v. Holzback, 89 Ohio St., 381, 106 N. E., 41, and Baker v. Industrial Commission, 135 Ohio St., 491, 21 N. E. (2d), 593.
In Swetland v. Miles, supra, this court held, in the second and third paragraphs of the syllabus, as follows:
“2. Section 11494, General Code [Section 2317.02, Revised Code], clearly and conclusively disqualifies an attorney from testifying ‘concerning a communication made to him by his client in that relation, or his advice to his client. ’
“3. This language is all comprehensive and unlimited as to such communications, and the statute provides the only two exceptions to the rule: 1. ‘By express consent of the client.’ 2. ‘If the client * * * voluntarily testifies.’ An action to contest the validity of the will of a client does not nullify or constitute an exception to this statutory rule.”
*123 The rule in the Swetland case was relaxed in Knepper v. Knepper, Exr., 103 Ohio St., 529, 134 N. E., 476, to the extent that where the attorney was a subscribing witness he could testify as a subscribing witness.
In the second paragraph of the syllabus of the Knepper case, the court said:
“Section 11494, General Code, disqualifies an attorney from testifying ‘concerning a communication made to him by his client in that relation, or his advice to his client/ except by the express consent of the client, and when a testator procures his attorney as a subscribing witness to his will he by that act expressly consents that the attorney may testify as fully as any other subscribing witness touching the capacity of the testator or any other fact affecting the validity of the will. The object of requesting a person to witness a will is to assure the legal execution of the will and preserve the evidence thereof.”
In that case, at page 536, Judge Johnson said:
“In that case it did not appear that the attorney was a witness to the will itself. When the attorney is a witness to the will itself, a different question is presented. When a testator procures his attorney as a subscribing witness to his will he by that act expressly consents that the attorney may testify as fully as any other subscribing witness as to the capacity of the testator or any other fact affecting the validity of the will. The only object that the testator has in requesting any person to witness his will is to assure the legal execution of the will and to preserve the evidence thereof. By making such request the testator thereby waives the exemption contained in Section 11494, General Code. But there is no such presumption as to the waiver of the incompetence of the attorney to testify to facts which vary the terms of a written instrument prepared by him as such attorney, and in a proceeding to construe a will the attorney who wrote the will and with whom the testator consulted concerning it is not competent to testify concerning a communication made to him by his client touching his estate, the objects of his bounty or the meaning or effect of provisions contained in the will.”
One of the matters as to which a subscribing witness may testify is the competency of the testator.
*124 Thus, under those cases, the implication is clear that the only time an attorney in a will contest can testify as to the mental competency of his testator-client, based on observations made during the attorney-client relationship, is when he is a subscribing witness to the will or in the event of a waiver of the privilege by one competent to do so. See Section 2317.02, Revised Code.
It must be kept in mind that the knowledge upon which the attorney bases his conclusion is not knowledge gained as a layman during the ordinary course of life, even though such knowledge is such as might have been available to any layman who had observed the decedent, but is knowledge which he obtained solely by reason of the fact that he was requested by the decedent to render professional services and which was gained during the attorney-client relationship.
Clearly, therefore, the rule must be that knowledge gained by an attorney, during the attorney-client relationship, which knowledge relates to the services for which he was employed, whether it be by words or merely by observations made by the attorney, falls within the rule relating to privileged communications.
Therefore, an attorney, who is not a witness to a decedent’s will, cannot, in the absence of a waiver as provided for in Section 2317.02, Revised Code, testify as to his opinion as to the decedent’s competency, where such opinion is based upon knowledge acquired by the attorney during the attorney-client relationship. See In re Estate of Coons, 154 Neb., 690, 48 N. W. (2d), 778, and In re Estate of Bayers, 116 Neb., 670, 218 N. W., 746.
It has been urged that the case of Bahl v. Byal, 90 Ohio St., 129, 106 N. E., 766, is authoritative in this case. The court, in the second paragraph of the syllabus in that case, said:
“It is competent for the physician of a testator to express an opinion as to the actual condition of his patient’s mind, founded on his study and observation of the testator while in professional attendance on him at the time and prior to the date of the will, and whether he was capable of comprehending large and complicated business propositions or the distribution of a large estate.”
*125 An examination of the opinion in that case shows that the physician did not treat the patient for any mental condition, hut merely for physical ailments. Under the theory of that case, if the treatment had been for a mental condition, the physician’s observations would have been privileged.. We held in Ousdenmoore v. Holzback, supra, and Baker v. Industrial Commission, supra, that the exhibition of part of his body by a patient to a physician when connected with the physician’s diagnosis is privileged. Thus, where the treatment is of the mind, such observations as to capacity are privileged. It is problematical, in view of the present theories of psychosomatic medicine, that if such a case were to come before us today we would hold as we did in the Bahl case.
Irrespective of that, however, the Bahl case is not controlling in the present instance. One of the matters an attorney who is engaged to prepare a will must determine prior to the preparation of the will is the competency of the testator. Such competency of course depends upon the mental capacity of the testator and necessarily must be determined from the attorney’s conversations with and observations of the testator. This determination of competency is a necessary and essential element of the preparation of a will, is directly related to the services for which the attorney is employed and is^ therefore, a definite part of the privileged communications made to the' attorney.
The case of Industrial Commission v. Warnke, 131 Ohio St., 140, 2 N. E. (2d), 248, has been urged in support of the plaintiffs’ position that the attorney in the present case should have been permitted to testify. In that case a widow was attempting to recover benefits under the Workmen’s Compensation Act, and the court held that the decedent by participating under the Workmen’s Compensation Act had waived his privilege and that the widow in seeking benefits under the act could waive the physician-patient privilege. We have no.such question of waiver here.
The remaining errors which the Court of Appeals found well taken relate to the direction of a verdict by the trial court in favor of the defendants and the overruling of the motion for *126 a new trial made by the plaintiffs. The Court of Appeals found that there was substantial evidence in the record from which reasonable minds could reach different conclusions on the allegations of the petition as to the mental capacity of the testator to make a will and determined that the trial court erred in sustaining the motion for a directed verdict and in overruling the motion for a new trial. Although it is not the policy of this court to weigh the evidence, where an examination of the record shows that all the material evidence permits but -one rational inference and reasonable minds cannot differ as to the effect thereof, the issue is one of law and the Supreme Court will examine the record to determine such question of law. State, ex rel. Squire, Supt. of Banks, v. City of Cleveland, 150 Ohio St., 303, 82 N. E. (2d), 709. Excluding the privileged testimony, an examination of the record in this case indicates that the trial court properly construed the evidence and was not in error in directing the verdict or in overruling the motion for a new trial.
Having determined that the Court of Appeals erred in the present case in reversing the judgment of the trial court and in remanding the cause, we reverse the judgment of the Court of Appeals and, rendering the judgment the Court of Appeals should have rendered, affirm the judgment of the trial court and enter final judgment in favor of the defendants.

Judgment reversed.

Taft, Bell and O’Neill, JJ., concur.
Weygandt, C. J., and Zimmerman, J., dissent.
Herbert, J., not participating.