N. S. BROWN ET AL., APPELLEES, V. EDWARD BROWN ET AL., APPELLEES, GEORGE BROWN ET AL., INTERVENERS, AP-PELLANTS.

FILED JUNE 20, 1906.   No. 14,418.

1. **Wills**: PRETERMITTED CHILD: BURDEN OF PROOF.  The burden of proof is upon a pretermitted child or grandchild to show that the omission to make provision for him in the will was unintentional. *Brown v. Brown*, 71 Neb. 200.

2. **Witnesses**: OBJECTION TO COMPETENCY.  An objection to evidence on the ground that it is incompetent does not go to the competency of the witness.

3. ———: CONFIDENTIAL COMMUNICATIONS: WAIVER.  The provisions of section 333 of the code against the disclosure of confidential communications may be waived by the party in whose favor they were enacted, and a party calling the attorney who has prepared his will as a witness thereto thereby impliedly consents that such attorney may disclose the facts and circumstances attending its execution, when the same is offered for probate or subsequently.

4. **Evidence** examined, and *held* sufficient to sustain a finding that claimants were intentionally omitted from the will.

APPEAL from the district court for Hamilton county: ARTHUR J. EVANS, JUDGE.  *Affirmed.*

*M. F. Stanley* and *O. A. Abbott,* for appellants.

*Hainer & Smith* and *J. H. Edmondson, contra.*

ALBERT, C.

This case is here on a second appeal.  The facts are stated at some length in the opinion disposing of the first appeal.  See *Brown v. Brown*, 71 Neb. 200.  The questions presented by the record are:  (1)  Are the two grandchil-

dren, George and Mabel Brown, designated in the former opinion as interveners, included as beneficiaries under the residuary clause of the will? (2) If not thus included were they intentionally omitted from the will by the testator? The district court resolved both those questions against the interveners, and entered a decree accordingly. The interveners appeal.

The first question, while not necessary to a decision on the former appeal, is discussed at some length in the opinion. At that time we reached the conclusion that the interveners were not included in the residuary clause. We are satisfied with the conclusion and think a further discussion of the question at this time would be profitless.

The second question is one of fact, and it is now contended that the finding of the trial court thereon is not sustained by sufficient evidence. As held on the former appeal, the burden of proof is upon the interveners to show that their omission from the will was unintentional. The principal testimony relied on as showing that fact is that given by the widow of the testator. She testified that toward the close of his life, and at the time the will was made, he was very forgetful; that he would go to town, come home again, and forget for what he had gone. What seems to be the material portion of her testimony as to the testator's testamentary intentions is as follows: "Q. You may state whether you ever heard him say anything about his intention as to his children and grandchildren, as to remembering them in his will or anything in regard to that matter? A. Well, I did not hear him mention the children, but he says, 'I want my heirs, my grandchildren, to have their money'; he did not mention them, but he said 'all of them.' He says, 'all of them,' all of my grandchildren, I want them to have $100 apiece.' Q. Did he say to you at any time what would be the result if he didn't do that? A. He never mentioned their names, he just told me over and over again, 'I will my grandchildren,' he says, 'all of them $100 apiece.'"

Cross-examination: "Q. You knew Mr. Brown had made

his will, about the time it was made, did you not? A. I know pretty near when it was made. Q. He brought a copy of that will home with him after it was made? A. Yes; he did. Q. And you and he read that copy over, and knew what was in it? A. I knew pretty near what was in it, but he had it made over after that, he come to town, and after he got back he says, 'I made that will some different.' And I says, 'How?' And he says, 'I willed my grandchildren, all of them $100 apiece.' He fetched the deed (will) home in his pocket. Q. And he kept that among his papers at home? A. Yes; he kept it locked up. And that is the words he says to me when he got home, he says, 'I want my grandchildren to have $100 apiece.' Q. And a copy of that will was among his papers after he died? A. Yes, sir. Q. And it was where he could have access to it any time he wanted it? A. Yes, sir. Q. Do you know of his reading it over several times? A. No, I don't, he never read it but once that I know of. Q. When was that, just after it was made? A. Just after the last will was made after he changed the will. Q. He first had a will in which he left them all out? A. Yes, sir. Q. And he wanted to do that in his first will? A. Yes, sir; and then he made it again and he says, 'I must will my grandchildren all of them $100 apiece.' Q. There was some of his grandchildren in Iowa that he didn't want to leave anything? A. I suppose so—the silly one I suppose. Q. And you and he had talked that matter over? A. I don't know. Well, he did say, too, that Charlie was silly, and he didn't need it, that's about all he ever said about Charlie." The testimony of the wife, as to the testator's memory, is corroborated by several other witnesses who give many specific instances showing extreme forgetfulness on his part.

On the other hand, the attorney who prepared the will for the testator, and who signed it as a witness, testified on behalf of the appellees. Among other questions, he was asked: "You may state what, if anything, was said at the time of the preparation of that will with regard to the

grandchildren of Henry S. Brown, deceased, and being the children of the deceased son by the name of Albert Brown, who had died prior to the death of his father and prior to the making of that will?" The interveners objected on the ground that the evidence was incompetent and immaterial. The objection was overruled, and the witness answered as follows: "We had a great deal of conversation at the time about his will, the terms and provisions of the previous will, and also of this will, were discussed fully. He told me of his sons who were dead, and he gave me the names of his grandchildren, six who are mentioned in the will as drawn, and told me the provision which he' wished to make for them. As I now recall it, he did not give me the names of those grandchildren who were not provided for by the will, but acquainted me with the fact that there were other grandchildren. Then, in taking the memorandum, I called his attention to the fact that he had already made one will which was unsatisfactory, and also called his attention to the fact that I advised him at the time that it would prove so, and suggested to him the advisability and wisdom of his stating to me all the facts and circumstances, that I could better prepare his will, that he wasn't making provision for all of his grandchildren. He was a very quiet and determined sort of a man, and sat and eyed me for a little time, and then said: 'Mr. Hainer, I have told you how I wanted this will drawn. I can't talk about it without getting angry, and I don't want to be angry when I am making my last will. You make that will as I told you.' And, complying with that peremptory order, I prepared the will. That was the substance and conclusion of the conversation respecting the grandchildren."

The objection to the foregoing evidence is couched in the most general terms. The intervener's brief merely calls attention to the fact that the evidence was admitted over their objection. As the issue was whether the interveners had been omitted from the will by oversight or inadvertence, we think evidence of what was said at the time

the will was drawn, so far as it goes to show that they were
before the mind of the testator at that time, would be com-
petent and material. The competency of the witness who
testified to such facts is not challenged by the general
objection interposed, because the rule is that an objection
to the competency of evidence, does not, ordinarily, go to
the competency of the witness. *Chicago, K. & N. R. Co. v.
Behney,* 48 Kan. 47; *Cornell v. Barnes,* 26 Wis. 473;
*Carter v. New York E. R. Co.,* 134 N. Y. 168. But, had the
objection gone to the competency of the witness, it would
have been unavailing. It is true, he is the attorney who
prepared the will for the testator, and the communications
made to him with respect thereto and for his guidance
in drawing the will are in the nature of confidential com-
munications, but he was also called as an attesting witness
and signed the will as such. While section 333 of the code
prohibits the disclosure of confidential communications
made to a practicing attorney, and certain other classes of
professional men, the next section provides that such pro-
hibition may be waived by the party in whose favor it was
enacted. When a will is offered for probate, the witnesses
thereto may be examined at length as to the mental capac-
ity of the testator, and the facts and circumstances attend-
ing its execution. And the testator, by permitting his
attorney to become a witness to the will, thereby consented
that he might be examined as a witness to such matters
after his death. *McMaster v. Scriven,* 85 Wis. 162, 39 Am.
St. Rep. 828; *Blackburn v. Crawfords,* 3 Wall. (U. S.) 175;
*Denning v. Butcher,* 91 Ia. 425, 59 N. W. 69; *In re Will of
Coleman,* 111 N. Y. 220; *Daniel v. Daniel,* 39 Pa. St. 191;
See also *Western T. A. Ass'n v. Munson,* 73 Neb. 858.
Indeed, it has been held that the general rule excluding
confidential communications made to an attorney does not
apply to communications made while giving instructions
for drafting a will, especially when those attacking the
will seek to take advantage of the privilege. 3 Jones, Evi-
dence, sec. 773. But it is not necessary to go to that ex-
tent in this case, the waiver to be implied from permitting

12

the attorney to attest the will as a witness being sufficient ground for the admission of the evidence in question. The witness above referred to also testifed that he prepared the will and gave it to the testator, who took it home with him, and came back the next day and signed it, retaining a carbon copy. The original was filed with the county judge.

A son of the testator was also examined as a witness, and testified to a conversation had with the testator after the will was made. The testator showed him a copy which he had retained, and reference was then made to the omission of any provision for the interveners and another grandchild, who is not a party to this proceeding. In that conversation, the reason given by the testator for not providing for the latter grandchild was that the child was confined in an insane asylum, which appears to have been true. The witness then asked him why he had not provided for "brother Bert's" children (the interveners). The witness thus gave the testator's answer: "They had trouble, and, well it was something about some money matters that they had their difficulty, and he said that he couldn't conscientiously give those children anything." There is other evidence tending to show that there was some difficulty between the testator and one or both of the parents of the interveners, but the nature of this trouble, its origin, and whether it was of a serious character or otherwise, is not made clear by the evidence. There is also evidence to the effect that the testator had sufficient memory to remember his near kin, knew his children and grandchildren, where they lived and how they were situated in life. Several witnesses were called who testified that he was a man of fair memory, one at least going to the extent of saying that he would consider him equal to if not above, the average man in the transaction of business matters. His family physician testified that he was a man of fairly good memory, and seemed to be very careful and methodical. That the will was admitted to probate conclusively establishes the fact that the testator was of sound mind and memory when it was executed. In

short, taking the entire evidence as to the state of the testator's memory when he made the will, the inference we draw therefrom is that his memory was about such as one would expect to find in a man of his years, and that, in the absence of a more reasonable explanation, the omission of these grandchildren from the will might be accounted for on the theory of forgetfulness on the part of the testator. But that theory, at best, would rest largely on conjecture. It is met by the positive testimony of the attorney who prepared the will, and of the son who talked with the testator concerning its provisions after it was made. The testimony of these witnesses is irreconcilable with the theory that the omission of the interveners from the will was due to oversight or forgetfulness, and we find nothing in the record that would justify us in rejecting their evidence. Giving the evidence of these two witnesses the weight to which it is entitled upon the facts and circumstances disclosed by the record, and considering it in connection with the other evidence adduced, we consider it amply sufficient to sustain the finding of the trial court. We have not overlooked the testimony of the wife of the testator as to the statement made to her by the testator as to his testamentary intentions and the provisions of the will after it had been made. According to her testimony, although he retained a copy of the will, he never showed it to her. He may have had what seemed to him good reasons for concealing or misstating its contents. But, however that may be, laying aside the usual presumptions attending the findings of the trial court, the evidence satisfies us that the omission to provide for the interveners is not due to accident, mistake or forgetfulness on the part of the testator, but that such omission was intentional.

It is recommended that the decree of the district court be affirmed.

Duffie and Jackson, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.