IN RE ESTATE OF MARY A. GRAY.

ROBERT E. NEITZEL, APPELLANT, V. HARRIET E. PURCHASE ET AL., APPELLEES.

FILED MARCH 24, 1911.   No. 16,320.

1. **Wills: PROBATE: CONTEST: INSTRUCTIONS.** In a contest over the probate of a will, it is error to instruct the jury their verdict will be that the instrument offered for probate is not the will of decedent, if they find she did not sign it, where the evidence is insufficient to sustain such a finding.

2. **———: ———: WITNESSES: PRIVILEGED COMMUNICATIONS.** In a contest over the probate of a will, between the person therein named as an executor or a legatee and the heirs at law of decedent, section 333 of the code, forbidding the disclosure of privileged communications, does not prevent a physician from testifying on behalf of either side of the controversy to the mental condition of testatrix, though the information which enables him to do so was acquired solely in his professional capacity, while attending her during her last illness.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE.   *Reversed.*

*McGilton, Gaines & Smith* and *T. A. Hollister,* for appellant.

*Byron G. Burbank* and *John C. Wharton, contra.*

ROSE, J.

In this suit the will of Mary A. Gray, deceased, is contested.   It was dated and witnessed at her home in Water-

loo, Douglas county, October 31, 1907, and she died at the same place November 8, 1907. Robert E. Neitzel was named in the will as an executor and is the proponent. The principal legatee is Electa A. Teal, with whom testatrix lived at the time of her death. They were relatives by marriage, but not by blood. When proponent presented the will to the county court of Douglas county for probate, the heirs at law of testatrix, who are contestants, made a number of objections, among which are the following: Testatrix was not of sound mind when she pretended to execute the will. She did not sign it. She did not execute it. In undertaking to make the will she was unduly influenced by Electa A. Teal. The county court overruled all the objections and admitted the will to probate. Contestants appealed to the district court where a trial resulted in a verdict in their favor. From a judgment reciting that the instrument offered for probate is not the will of Mary A. Gray, deceased, proponent has appealed to this court. The real controversy is between the heirs at law and the principal legatee.

In substance the trial court instructed the jury: Your verdict will be that the instrument offered for probate is not the will of decedent, if you find from the evidence she did not sign it. This is assigned as error, on the ground there is no evidence to sustain such a finding. The argument of proponent on this point seems to be conclusive. The attestation clause is in due form, and it was signed by the following witnesses: Helen B. Gould, a neighbor of testatrix; Anna Buman, a professional nurse who attended her during her last illness; Harvey D. Kelly, an attending physician; Robert E. Neitzel, cashier of the Bank of Waterloo. At the trial each of these persons testified to having signed the attestation clause as a subscribing witness at the time and place stated in the will, and that Mary A. Gray, in the presence of each of them, signed the will. Anna Buman further testified: "Mrs. Gray wrote her name first, and I was asked to write mine, and the rest followed me." She also

testified: "We signed immediately after she signed her name;" and further: "Mrs. Gray asked me to sign the will." The testimony of all the subscribing witnesses was of like import. In addition each testified, after showing the proper qualifications, that at the time the will was signed testatrix was of sound mind. The evidence of her testamentary competency is uncontradicted. Contestants made no effort to prove that testatrix did not sign the will, except by H. B. Waldron, who was an officer of the Citizens State Bank of Waterloo. She had formerly been a depositor of his, and her last business transaction with him occurred March 2, 1906, when she transferred by check from his bank to the bank of which proponent was cashier a balance of $3,538.89. Waldron produced the check on the witness stand and identified the signature of the drawer as that of testatrix. In qualifying himself to express an opinion on the genuineness of her signature, he stated, in answer to a question, that he knew "the signature of Mary A. Gray *in the usual transaction of her affairs.*" The will was then submitted to him, and he was asked whether the signature was that of Mary A. Gray, and answered: "It is not her signature." On cross-examination he was asked: "You do not say that she did not write the name that appears there?" His reply was "No, sir." He was not present when the will was signed, and his opinion, in connection with the signatures themselves, is the only proof on that subject, outside of the testimony of the subscribing witnesses. The facts showing the reasons for a difference in the appearance of the signatures on the two instruments were fully shown by uncontradicted evidence. The check was drawn March 2, 1906, when testatrix was an active woman. More than a year later she fell and was fatally injured by the breaking of a bone. She had been an invalid five months when she signed her will October 31, 1907, and she was reclining in an invalid's chair at the time. Her nurse had given her long-distance glasses, instead of her reading glasses, and for that reason she could not see

well while signing her name. According to his own testimony, Waldron's last business transaction with testatrix occurred March 2, 1906, and there is nothing to indicate that he took into account the changed conditions when he expressed the opinion that the signature to the will was not hers. His testimony was applicable alone to earlier times and circumstances. When all the facts are considered, his opinion does not contradict the direct and positive testimony of the four subscribing witnesses that testatrix signed the will in their presence October 31, 1907. There is nothing to impeach these witnesses or to discredit their testimony. The original check and the will itself are in the record, and the signatures themselves contain no indication that either is not genuine, when the changed conditions and difference in time are understood. The evidence is wholly insufficient to sustain a finding that the will was not signed by testatrix, and that question should not have been submitted to the jury. Proof that testatrix was of sound mind and that the will was duly executed is also uncontradicted. These questions, likewise, were erroneously submitted to the jury.

Proponent offered to show the mental condition of testatrix by Dr. James C. Agee, who was called as a witness, but the trial court rejected his testimony on the ground that the information which enabled him to testify on that subject was acquired by him in his professional capacity, while he was attending her as a physician during her last illness. This ruling is assigned as error. To sustain the trial court, contestants invoke the statutory provision that no physician "shall be allowed, in giving testimony, to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." Code, secs. 333, 334. The question presented by the record may be stated in this form: In a contest over the probate of a will, between a legatee or an executor and the heirs at law of testatrix, may the

latter's physician testify to her mental competency, over the objection of such heirs, where the information which enables him to do so was acquired solely in his professional capacity, while attending her during her last illness? The code provides that the patient may waive the privilege, or protection of the statute, but there is eminent authority for the doctrine that the right of waiver cannot be exercised by any one else, and that testimony of the physician as to the mental competency of his deceased patient should be excluded under the circumstances of this case. *In re Will of Hunt*, 122 Wis. 460; *In re Estate of Van Alstine*, 26 Utah, 193; *Auld v. Cuthro*, 128 N. W. (N. Dak.) 1025, and cases cited; *In re Estate of Nelson*, 132 Cal. 182. This court, however, has held that the statutory right of waiver extends to "the personal representative of a deceased person." *Parker v. Parker*, 78 Neb. 535. May one class of representatives, in a contest over the probate of a will, waive the privilege to the exclusion of another class, where the respective rights of the disputants depend on the mental condition of a deceased person? Does the statute permit heirs at law to require a disclosure on part of the physician, if his patient was insane, and suppress the truth, if mentally competent? No such intention can be found in the statute or in the reasons for its enactment. If heirs at law, to protect the property of their ancestor from an insane act and to obtain their own rights under the statute of distributions, may require a physician to testify to the condition of his patient's mind, there is no reason why a legatee or an executor may not also call upon him for the purpose of protecting the will and a legacy under it. Having held in the case last cited that the right to waive the statutory privilege extends to the personal representative of a deceased person, consistency and justice require a construction which permits an executor or a legatee to compel a physician to testify to the mental condition of his patient, when that question is involved in a contest with the heirs over the probate of the patient's will. Though the courts

of the country are divided on this question, the construction here announced has frequently been adopted under similar statutes. *Thompson v. Ish,* 99 Mo. 160, 17 Am. St. Rep. 552; *Denning v. Butcher,* 91 Ia. 425; *Winters v. Winters,* 102 Ia. 53; *In re Walker's Will,* 128 N. W. (Ia.) 386; *In re Estate of Shapter,* 35 Colo. 578; *Olson v. Court of Honor,* 100 Minn. 117. The courts, however, have authority to protect the memory of deceased persons from objectionable disclosures. *Denning v. Butcher,* 91 Ia. 425.

For the errors discussed, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.