IN RE ESTATE OF SARAH ELIZABETH COONS, DECEASED.
LULU C. MOORE, APPELLEE, v. WILLIAM BRYAN MOORE ET AL., APPELLANTS.
48 N. W. 2d 778

Filed July 16, 1951. No. 32984.

*Ferneau & Kiechel,* and *Dwight Griffiths,* for appellants.

*John P. McKnight* and *John C. Mullen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an appeal in a will contest in which the trial court directed a verdict for the proponent. The contestants appeal.

On October 8, 1942, Sarah Elizabeth Coons executed her last will and testament. The attesting witnesses were Bess M. Kay and Mrs. Lee Pyles. The only other person present at the time of the execution of the will was Ernest F. Armstrong, the attorney who drafted the will at the request of Mrs. Coons. The testatrix died on January 19, 1950. Thereafter Edward E. Moore, a brother of Sarah Elizabeth Coons and the chief beneficiary under the will, offered the will for probate. The will was admitted to probate in the county court of Nemaha County and Edward E. Moore was appointed executor of the estate of Sarah Elizabeth Coons. On

May 2, 1950, Edward E. Moore died and Lulu C. Moore, his widow, became the administratrix with will annexed of the estate of Sarah Elizabeth Coons as successor to Edward E. Moore, deceased, and now stands as the proponent of the will of Sarah Elizabeth Coons.

The petition for the probate of the will of Sarah Elizabeth Coons was in the usual form and alleged, among other things, that the heirs at law of the testatrix were Clara Peabody, a sister; Frank Moore, a brother; Edward E. Moore, a brother; Vern McIninch, a nephew, the son and only surviving heir at law of a deceased sister, Miranda McIninch; and Ben Moore, Claude Moore, Bryan Moore, Howard Moore, Helen Handley, May Argabright, and Raymond Moore, nephews and nieces, and the heirs at law of William Moore, a deceased brother of Sarah Elizabeth Coons. Objections to the probate of the will were filed alleging that the will of Sarah Elizabeth Coons was not executed in the manner and form required by law; that Sarah Elizabeth Coons did not have the mental capacity to make a will at the time she purported to execute it; and that the purported will was the result of undue influence on the part of Edward E. Moore and others not known to the objectors.

The proponent of the will in making a prima facie case produced the evidence of Bess M. Kay, one of the attesting witnesses, and Ernest F. Armstrong, the attorney who drafted the will. It is the contention of the objectors that the proponent of a will must, when objections have been filed to the probate of the will, produce all of the attesting witnesses to the will or show their unavailability in the manner prescribed by sections 30-219 and 30-219.01, R. R. S. 1943. It is further contended that the testimony of the witness Armstrong, the attorney who drafted the will, is privileged, and, upon objection, incompetent for that reason. At the close of proponent's evidence in chief the objectors moved for a directed verdict for the foregoing reasons. We shall first determine the correctness of the ruling of the

trial court in denying the motion for a directed verdict.

The general rule in this state is that the burden is upon the proponent of a will to prove not only the execution of the will but the capacity of the testator to make it as well. In Seebrock v. Fedawa, 30 Neb. 424, 46 N. W. 650, the rule was announced as follows: "It is the duty of the proponent in the first instance to offer sufficient testimony of the capacity of the testator to make out a prima facie case. The contestant will then introduce his proof to show the invalidity of the will; after which the proponent may introduce further testimony to sustain the will, as well as rebutting testimony. During the entire trial the burden of proof remains with the proponent. Unless the sanity of the testator be established by a preponderance of the testimony, the will cannot be admitted to probate and record." See, also, In re Estate of Renter, 148 Neb. 776, 29 N. W. 2d 466; In re Estate of Hunter, 151 Neb. 704, 39 N. W. 2d 418. The question here presented is whether or not proponent made a prima facie case in the first instance.

The record shows that only one of the two attesting witnesses was called to testify to the compliance with the statutory requirements for a valid testamentary disposition of property by will. Proponent produced no evidence of the unavailability of the second attesting witness, Mrs. Lee Pyles. After the motion of contestants for a directed verdict was overruled, Mrs. Lee Pyles was called as a witness for the contestants. She was therefore available to the proponent so far as the record shows. Was she an indispensable witness for the proponent in making a prima facie case?

In this respect we point out the provisions of section 30-218, R. R. S. 1943: "If no person shall appear to contest the probate of a will at the time appointed for that purpose, the court may, in its discretion, grant probate thereof on the testimony of one of the subscribing witnesses only, if such a witness shall testify that such will was executed in all the particulars as re-

quired in section 30-204, and that the testator was of sound mind at the time of the execution thereof." We point out that this section authorizes the court to grant probate of a will on the testimony of one attesting witness only where no person appears to contest the will. The inference is strong that in case of a contest the testimony of all of the attesting witnesses is indispensable to the granting of probate of a will when they are available. Where none of the attesting witnesses resides in the state at the time appointed for proving a will, the court is authorized to admit the testimony of other witnesses to prove the sanity of the testator and the execution of the will. § 30-219, R. R. S. 1943. Where witnesses to the will are unavailable because they are serving in or are present with the armed forces of the United States, are in service as merchant seamen, are dead, or are mentally or physically incapable of testifying, the court is authorized to admit a will to probate upon the testimony of two or more credible disinterested witnesses to the effect that the signature to the will is in the handwriting of the person whose will it purports to be, or upon other sufficient proof of such handwriting. § 30-219.01, R. R. S. 1943. The foregoing statutory exceptions are not shown to have any application to the case at bar.

The manner of disposing of property by will is prescribed by statute. The formalities provided by statute for executing and proving a will must be followed to give validity to the purported will. We think the applicable statutes require, in making a prima facie case, that the evidence of the attesting witnesses is indispensable to the proving of a will except where such witnesses are unavailable.

In Gillis v. Gillis, 96 Ga. 1, 23 S. E. 107, 51 Am. S. R. 121, 30 L. R. A. 143, the court said: "It is well settled that the subscribing witnesses to a will must, if practicable, be called and examined; but the fate of a will does not depend entirely upon their testimony.

Upon the trial of an application to prove a will in solemn form, they are, all of them, unless accounted for, indispensably necessary witnesses; but the testimony, even as to the factum of execution, is not confined to them. The fact to be established is the proper execution of the will. If that is proved by competent testimony, it is sufficient, no matter from what quarter the testimony comes, provided the attesting witnesses are among those who bear testimony, or their absence is explained. The inquiry, as in other cases, is whether, taking all the testimony together, the fact is duly established. It is not required that any one or more of the essential facts should be proved by all, or any number, of the attesting witnesses. The right is simply to have the attesting witnesses examined, no matter what their testimony may be. The law does not allow proof of the valid execution and attestation of a will to be defeated at the time of probate by the failure of the memory on the part of any of the subscribing witnesses." See Annotation II b, 63 A. L. R. 1200; 57 Am. Jur., Wills, § 903, p. 595; German Evangelical Bethel Church v. Reith, 327 Mo. 1098, 39 S. W. 2d 1057, 76 A. L. R. 604. The rule is that a proponent is required to present all attesting witnesses if their testimony is available, otherwise a prima facie case is not made. Consequently it was error on the part of the trial court to overrule contestants' motion for a directed verdict when proponent failed to present an attesting witness to the will, not shown to be unavailable as provided in sections 30-219 and 30-219.01, R. R. S. 1943.

The contestants assert that it was error for the trial court to permit the attorney who drafted the will, and who was present at the time of its execution, to testify to the mental capacity of the testatrix. The claim that such evidence is privileged is based on section 25-1206, R. R. S. 1943, which provides: "No practicing attorney, counselor, physician, surgeon, minister of the gospel or priest of any denomination, shall be allowed in giving

testimony to disclose any confidential communication, properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

This court has determined the question. It was held in the case of In re Estate of Bayer, 116 Neb. 670, 218 N. W. 746, that section 8835, Comp. St. 1922, now section 25-1201, R. R. S. 1943, is applicable and controlling and renders communications made to an attorney by his client, in the absence of a proper waiver, inadmissible in a contested probate proceeding to establish the competency of such client in a contest between legatees and devisees on the one hand and the legal heirs on the other, even though the will was not drafted by him. In other words, an attorney may not testify to any communication arising from his relationship with the testator as attorney and client. The authorities are fully discussed in the Bayer case and we think it arrives at a correct conclusion, to which we adhere. Our conclusion necessarily is that an attorney who drafted the will of a testator is an incompetent witness, upon objection, to testify to any communication pertaining to the mental competency of the testator which arises out of his relationship with the testator as attorney and client. The proponent relies upon Brown v. Brown, 77 Neb. 125, 108 N. W. 180; Lennox v. Anderson, 140 Neb. 748, 1 N. W. 2d 912; and Elliott v. Elliott, 3 Neb. (Unoff.) 832, 92 N. W. 1006. These are cases where the testator waived the privilege by requesting the attorney to attest the will as a subscribing witness. They do not sustain the right of an attorney who drafted the will of the testator, in the absence of a waiver, to testify to the mental competency of the testator at the time of the execution of the will.

Proponent contends that the personal representative waived the privilege by calling, as a witness, the attorney who drafted the will. This contention was also

determined in the case of In re Estate of Bayer, *supra,* wherein it was held the personal representative of a testatrix could not waive the privilege for her. Briefly stated, the holding of the Bayer case is that after the amendment of section 8835, Comp. St. 1922, now section 25-1201, R. R. S. 1943, the right to waive the privilege was limited by the following language: "The following persons shall be incompetent to testify: * * * an attorney concerning any communication made to him by his client in that relation or his advice thereon, without the client's consent in open court or in writing produced in court." Consequently, a waiver of the privilege is not available without the client's consent in open court or by a writing produced in court. Cases adopted since this statutory change was made which do not take cognizance thereof are not controlling precedents in determining the matter presented. Among the cases in this class are Parker v. Parker, 78 Neb. 535, 111 N. W. 119, and In re Estate of Gray, 88 Neb. 835, 130 N. W. 746, 33 L. R. A. N. S. 319, Ann. Cas. 1912B 1037. We think the trial court erred in overruling the objections of contestants to the testimony of the attorney who drafted the will for testatrix, bearing upon her mental competency, for the reason that such testimony was privileged, in that it grew out of the relationship of attorney and client, and had not been waived in the manner authorized by the statute.

It is urged also that the attorney was an incompetent witness to establish the legal requirements for the execution of the will. We do not think that the testimony of the attorney who drafted the will, concerning the formal requirements of its execution, is a confidential communication within the meaning of section 25-1206, R. R. S. 1943, or within the prohibition of section 25-1201, R. R. S. 1943. The word "communication" is used to denote the fact that one person has brought an idea to the perception of another. Testimony of the mechanics followed in executing the will are not within

such definition. Factual matters concerning the execution of the will, not gleaned from communications by the testator, are not privileged and constitute competent evidence concerning which an attorney present at the execution of the will may properly testify.

We deem it necessary to discuss the effect of section 25-1315.01, R. R. S. 1943, to avoid the possibility of error upon a retrial of this case. This section provides: "A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor." Prior to the adoption of this section of the statute, if all parties moved for directed verdicts without reservation, the effect was to waive a jury trial. But since the adoption of section 25-1315.01, R. R. S. 1943, such is not the case. A motion for a directed verdict by all parties to the litigation is not a waiver of a jury trial. Such motions raise only questions of law and, after their determination, if any question of fact remains it is for the jury, unless a jury is expressly waived by the parties. The statute in question is similar to Rule 50 (a), Federal Rules of Civil Procedure. Federal cases dealing with this rule sustain the interpretation we have given to section 25-1315.01, R. R. S. 1943. See, Starfred Properties, Inc. v. Ettinger, 131 F. 2d 575; Vilter Mfg. Co. v. Rolaff, 110 F. 2d 491; Marsh v. Illinois Central R. R. Co., 175 F. 2d 498.

The record shows that at the close of proponent's case contestants moved for a directed verdict. The motion was overruled. At the close of the evidence offered on behalf of contestants the contestants renewed their motion made at the close of proponent's evidence

in chief for a directed verdict. The motion was again overruled. The motion was again renewed at the close of all the evidence. The trial court overruled the motion of contestants and sustained the motion of proponent for a directed verdict. Contestants thereupon filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. This motion was overruled by the trial court. In so doing we think the trial court was in error.

The motion for judgment notwithstanding the verdict, or in the alternative for a new trial, was filed pursuant to section 25-1315.02, R. R. S. 1943. The pertinent part of this section provides: "Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed." It will be noted that the trial court was empowered, when error appeared in the record, to grant a new trial or to direct the entry of judgment as if the requested verdict had been directed. Which of the two orders is proper to be entered is to be determined from the record. It is a judicial discretion and not an absolute one that is lodged in the court. Our holding that the testimony of all available attesting witnesses to a will is indispensable to the making of a prima facie case appears to be one of first impression in this state. The competency of the attorney who drafted the will to testify to the proper execution

of the will and to the mental competency of the testator does not appear to have been clearly stated in the previous holdings of this court. The possibility exists that other evidence may be obtained in lieu of that held to be incompetent. In view of these considerations we feel that the ends of justice would be better served by granting a new trial. The purpose of the act is to serve the ends of justice and not to defeat them. Because of the errors pointed out the motion of the contestants for a new trial should have been sustained. The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

SIMMONS, C. J., dissenting.

I dissent.

The majority hold that the attorney who drafted the will offered for probate is an incompetent witness, upon objection, to testify to any communication pertaining to the mental competency of the testator which arises out of his relationship with the testator as attorney and client. This conclusion is based upon section 25-1206, R. R. S. 1943, and In re Estate of Bayer, 116 Neb. 670, 218 N. W. 746.

The conclusion is not supported by our decision in the case of In re Estate of Bayer, *supra,* and it is contra to our opinion in Lennox v. Anderson, 140 Neb. 748, 1 N. W. 2d 912.

A decision to be a precedent should be one where there is a similarity in controlling facts and issues and then to the extent that the decision relates itself to those facts and issues.

In the Bayer case an attorney was asked as to conversations and instructions received by him from a client as to the proposed disposition of property by will. *The attorney did not draft the will offered for probate.* The opinion specifically limits the question presented to that fact situation. Here the attorney *who drafted the will* was called to testify as to the men-

tal competency of his client. The distinction is material. It lies in the reason for the rule of privileged communications as applied to an attorney. It is stated by Wigmore as follows: "It has already been noticed (ante, § 2309) that the fact of execution of a deed has commonly been declared to be without the privilege, partly because it was not a subject of communication at all, and partly because, if a communication, it was not impliedly a confidential one. On the other hand, the contents of the deed are generally within the privilege (ante, § 2308). No further examination of the principle as applied to deeds is here necessary.

"But for wills a special consideration comes into play. Here it can hardly be doubted that the execution and especially the contents are impliedly desired by the client to be kept secret during his lifetime, and are accordingly a part of his confidential communication. It must be assumed that during that period the attorney ought not to be called upon to disclose even the fact of a will's execution, much less its tenor. But, on the other hand, this confidence is intended to be temporary only. That there may be such a qualification to the privilege is plain. That it appropriately explains the client's relation with an attorney drafting a will seems almost equally clear.

"It follows, therefore, that after the testator's death the attorney is at liberty to disclose all that affects the execution and tenor of the will.

"The only question could be as to communications tending to show the invalidity of the will, i. e. from which a circumstantial inference could be drawn that the testator was insane or was unduly influenced. It may be conceded that the testator would not wish the attorney to assist in any way the overthrow of the will. But the answer is that such utterances were obviously not confidentially made with reference to the secrecy of the fact of insanity or undue influence, for the testator of course did not believe those facts to exist and

therefore could not possibly be said to have communicated them.

"As to the tenor and execution of the will, it seems hardly open to dispute that they are the very facts which the testator expected and intended to be disclosed after his death; and, with this general intention covering the whole transaction, it is impossible to select a circumstance here or there (such as the absence of one witness in another room) and argue that the testator would have wanted it kept secret if he had known that it would tend to defeat his intended act. The confidence is not apportionable by a reference to what the testator might have intended had he known or reflected on certain facts which now bear against the will." 8 Wigmore, Evidence (3d ed.), § 2314, p. 610. See, 58 Am. Jur., Witnesses, § 505, p. 283; 70 C. J., Witnesses, § 567 (15), p. 424; Annotation, 64 A. L. R. 185.

In Lennox v. Anderson, *supra,* we followed the reasoning and almost literally the language of these authorities and said: "When a person employs an attorney to have a will drawn and confides in the attorney as to the disposition of his property, it is the client's desire that during his lifetime the will be kept a secret, and a confidential relation exists. The attorney is not privileged to give the will publicity in any form. This confidential communication is temporary. After the testator's death, the attorney is at liberty to disclose all that affects the execution and contents of the will. The privilege has been waived by the testator, especially so when the scrivener of the will is a witness to it." I call attention to the fact that in the Lennox opinion we quoted the exact statute that the Bayer case considered and upon which the majority rely here. In the Lennox case the will had been revoked and for that reason we held the proffered testimony was not admissible. This holding is clearly in accord with the Bayer case and illustrates the distinction here made.

Basically it is not a question of waiver but a ques-

tion of the point beyond which the privileged communication rule has no application. The reason for the rule terminating with the death of the client the rule itself should terminate.

An examination of the briefs in the Bayer case discloses that it was presented on the fact distinction that the attorney witness there had not drafted the will involved; that we decided the exact question submitted; and that the question here presented was not in anywise involved there.

I also call attention to the fact that section 25-1206, R. R. S. 1943, relied upon here, and in the Bayer case, was not involved in the amendment there discussed. The section properly construed is not a bar to the admissibility of the evidence here involved. The decision here made places us in a minority view class as to this question, as is shown by the authorities above cited.

The majority hold that there has been no waiver here. In view of the above authorities and our opinion in the Lennox case I do not consider that question is necessarily involved; nevertheless it should be explored.

The majority rely upon section 25-1201, R. R. S. 1943, and again the Bayer case as determining the question. To repeat—the claimed waiver there involved was that of the testimony of the lawyer who did not draft the will so it related to a confidential communication generally. The decision of course is related to this fact situation, so I submit the Bayer case is not controlling here.

Here, as in the Bayer case, section 25-1201, R. R. S. 1943, is relied upon. Much is said in the Bayer opinion about an amendment to this section. The majority refer to that amendment. A reading of the Bayer case leaves the impression that the amendment there relied upon was of recent origin, although a close examination of the opinion does not sustain that impression. The fact is that the amendment there relied upon was passed by the Territorial Legislature in 1866. R. S.

1866, § 328, p. 449. So the section as it now exists has been the law since territorial days. The Bayer opinion also leaves the impression that the amendment was one specifically directed at this provision. The facts are that this amendment was in a complete revision of our code of substantive and adjective law.

The Code of Civil Procedure so adopted had in it some 1,100 sections. R. S. 1866, p. 394. To impart to the Legislature a particular intent as to this one section is carrying a good rule too far. This is particularly true in view of the provisions of section 1 of the Code (p. 394) that it "* * * shall be liberally construed, with a view to promote its object, and assist the parties in obtaining justice." I am inclined to ask, does it assist the obtaining of justice to close the lips of the one witness who knows as much if not more than any other witness about the question at issue, to-wit, the mental competency of the testator at the time the will was executed?

The majority leave the impression that the amendment is of recent origin for they state: "Cases adopted since this statutory change was made which do not take cognizance thereof are not controlling precedents in determining the matter presented." Of course that means any such case in all our 153 volumes of reported decisions. On that basis the majority put aside Parker v. Parker, 78 Neb. 535, 111 N. W. 119, and In re Estate of Gray, 88 Neb. 835, 130 N. W. 746, 33 L. R. A. N. S. 319, Ann. Cas. 1912B 1037.

We held in Parker v. Parker, *suprà,* that "The provisions of the code against the disclosure of confidential communications may be waived by the party in whose favor they were enacted, and the privilege of waiver extends to the personal representative of a deceased person." That case involved the testimony of an attorney who prepared the will, as does the instant case. This holding was not a mere statement in discussing the issues, but rather it was the only point in the case

deemed sufficiently important to mention in the syllabus.

In re Estate of Gray, *supra,* was a will contest where "The real controversy is between the heirs at law and the principal legatee." In that case proponent offered the testimony of a doctor to show the mental condition of testatrix where the information which enabled him to do so was acquired solely in his professional capacity. We there directly considered "eminent authority" that the privilege cannot be waived by "any one else." We there considered and quoted from what is now section 25-1206, R. R. S. 1943. We there recognized that the courts were divided on the question. We followed Parker v. Parker, *supra,* and said: "Having held in the case last cited that the right to waive the statutory privilege extends to the personal representative of a deceased person, consistency and justice require a construction which permits an executor or a legatee to compel a physician to testify to the mental condition of his patient, when that question is involved in a contest with the heirs over the probate of the patient's will. Though the courts of the country are divided on this question, the construction here announced has frequently been adopted under similar statutes." We there kept in accord with the territorial legislative purpose to construe the act so as to "assist the parties in obtaining justice." The majority now undertake to serve the "ends of justice" by granting a new trial and at the same time deny what we have heretofore held that "consistency and justice require."

These two decisions have for 40 years remained unchallenged and unquestioned in our decisions.

Admittedly the Gray case did not involve subsection 3 of section 25-1201, R. R. S. 1943. I refer to it for three reasons. The majority have seen fit to consider it an authority and cast discredit upon it. It is important in that this court there puts its approval upon the holding in the Parker case and further that we there

held that the privilege can be waived by someone other than the privileged person. The waiver provision cited and so construed in the Gray case is applicable also to the waiver provision here relied upon by the majority.

It cannot be assumed that the careful author of the Bayer opinion overlooked the Parker and Gray opinions for they are cited in the annotations of the statute from which he quoted. It seems reasonable to assume that he did not deem them as in anywise in conflict with the opinion he was writing. Adopting a phrase often used by the author of the Bayer opinion "indeed" they were not mentioned therein because that question decided by those cases was not presented in the Bayer case.

It is quite apparent that the Bayer case was not intended to decide nor did it decide the issue presently presented and is not a precedent or authority for the position taken by the majority.

It is recognized that section 25-1201, R. R. S. 1943, provides that "The following persons shall be incompetent to testify * * *" and that the issue relates to the third subsection— "* * * an attorney concerning any communication made to him by his client in that relation or his advice thereon, without the client's consent in open court or in writing produced in court." However, both of these provisions were in the 1866 act under a chapter entitled "Competency of Witnesses." § 328, p. 449, R. S. 1866. That act in a later section provided: "The *prohibitions* in the preceding sections *do not apply* to cases where the party in whose favor the respective provisions are enacted, waives the rights thereby conferred." § 334, p. 450, R. S. 1866. (Emphasis supplied.)

I submit the Legislature did not have a particular distinction in mind in expressing what is in effect the same "prohibition." But as to waiver the authorities state: "That an executor or administrator may exercise authority over all the interests of the estate left by the client, and yet may not incidentally have the

right, in the interest of that estate, to waive the privilege of concealing confidential communications affecting it, would seem too inconsistent to be maintained under any system of law. It has, indeed, seldom been maintained for the present privilege; but the denial of this waiver for another privilege, by some Courts (post, § 2391), demands here the more emphatic repudiation of such a fallacy * * *. This view is accepted with practical unanimity. It is further generally agreed that in testamentary contests the privilege is divisible, and may be waived by the executor, the administrator, the heir, the next of kin, or the legatee." 8 Wigmore, Evidence (3d ed.), § 2329, p. 634.

"The personal representative of the deceased may waive the privilege. One who is entrusted with the management of the deceased's property may surely be trusted to protect the memory and reputation of the deceased, in so far as it is liable to injury by the disclosure of his physical condition when alive. It is incongruous to hold that the person who manages the litigation of the deceased's property-interests has no power to waive rules of Evidence for the purpose of advancing those interests. The power of an heir may also be conceded, if we remember that the heir, first, is at least equally interested in preserving the ancestor's reputation, and, secondly, has an equal moral claim to protect the deceased's property-rights from unwarranted diminution. The futility, under the circumstances, of predicating any privilege is the more apparent when (as in the usual case) the issue turns upon the fact of a testator's sanity, which is so bruited publicly in the litigation that the pretense of preserving secrecy is a vain one * * *. Except in two or three jurisdictions, it is usually agreed that the deceased's or a minor's or an insane person's representative (and probably also the heir) may waive the privilege." 8 Wigmore, Evidence (3d ed.), § 2391, p. 840. See, also, 70 C. J., Witnesses,

§ 628 (2), p. 462. In both texts our opinion in the Parker case is cited.

Section 334, R. S. 1866, above quoted, became section 25-1207, R. R. S. 1943, with this amendment added in 1925 (Laws 1925, c. 74, p. 235): "* * * and if a party to any action now pending, or hereafter brought, shall offer evidence with reference to his physical or mental condition, or the alleged cause thereof, or if the personal representative of a deceased person in any such action shall offer such evidence as to such deceased person, the right conferred by section 25-1206 shall be deemed to have been waived as to any physician or surgeon who shall have attended said party or said deceased person." The language on its face leaves an inference that the Legislature intended to indicate a restriction on the waiver provisions except as to physicians or surgeons. The reference to "any action now pending" is the key to the meaning of this amendment. Culver v. Union P. R. R. Co., 112 Neb. 441, 199 N. W. 794, was filed July 18, 1924. A reading of this opinion clearly discloses that the 1925 amendment was the result of a legislative purpose to further remove the prohibitions of the statute in part in order to "assist the parties in obtaining justice."

I would hold that the trial court did not err in overruling objections to the testimony of the attorney.

MESSMORE, J., joins in the dissent.