IN RE ESTATE OF SARAH ELIZABETH COONS, DECEASED. LULU C. MOORE, ADMINISTRATRIX WITH WILL ANNEXED, AS SUCCESSOR TO EDWARD E. MOORE, NOW DECEASED, APPELLEE, v. WILLIAM BRYAN MOORE ET AL., APPELLANTS.

64 N. W. 2d 301

Filed May 7, 1954. No. 33462.

*Ferneau & Kiechel* and *Dwight Griffiths,* for appellants.

*John P. McKnight* and *John C. Mullen,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an appeal in proceedings involving the validity of an instrument purporting to be the will of Sarah Elizabeth Coons, deceased. The result of the trial in the district court was the admission of the instrument to probate as the will of the deceased. The contestants appeal.

The petition for the probate of the will of the deceased stated that she died testate January 19, 1950, a resident of Nemaha County, the owner of real estate and personal property; that petitioner was named in the will as executor; that the will was tendered for probate; and that the deceased left surviving her as her heirs a sister, two brothers, a nephew the son of a deceased sister, and five nephews and two nieces the children of a deceased brother. The sister, the son of the deceased sister, and the children of the deceased brother of the testatrix objected to the probate of the will for the reasons, asserted by them in their pleading, that it was not executed as required by law; that the testatrix was not of sound mind at the time she attempted to make it; and that it was the result of undue influence exerted on the testa-

trix by Edward E. Moore and others unknown to the contestants.

This is the second appeal in these proceedings to this court. In re Estate of Coons, 154 Neb. 690, 48 N. W. 2d 778. The result of the first appeal was that a judgment sustaining the validity of the will based upon an instructed verdict for the proponent was reversed and the cause remanded on the grounds that proponent produced only one of the two attesting witnesses to the will and did not show the unavailability of the other; that incompetent testimony of a privileged communication between the testatrix and her attorney was improperly received against objections of contestants; and that the district court incorrectly denied the motion of contestants for a directed verdict and should have granted their motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The request of contestants at the close of the evidence of the proponent on the second trial that the court direct a verdict for them, because the evidence produced by the proponent was insufficient to constitute a prima facie case that the deceased had testamentary capacity at the time she signed the instrument claimed to be her will, was denied. It was renewed when the proof offered by contestants was concluded and again when all the proof was completed. It was each time denied.

The appellants say that the appeal is presented solely on the total absence from the record of any evidence tending to establish testamentary capacity of testatrix at the time she attempted to make the will, the subject of these proceedings. The sole problem of this appeal is whether proponent sustained the burden of establishing prima facie that the testatrix was of sound mind when she signed the instrument herein referred to as her will.

The requirement has been frequently stated and it was recently reiterated by this court that the proponent must in the first instance produce evidence of the

mental capacity of the testator to make out a prima facie case; that the burden of proof in this regard is always on the proponent; and if soundness of mind of the testator is not established prima facie by the evidence the will may not be admitted to probate. In re Estate of Hunter, 151 Neb. 704, 39 N. W. 2d 418, states the rule: "In the contest of a will on the charge that the testator was mentally incompetent to make it, the burden is on the proponent throughout the litigation to prove by the greater weight of the evidence the testamentary capacity of the testator at the time the will was made." See, also, In re Estate of Coons, *supra.*

The testatrix fell on the evening of September 3, 1942, while in the chicken house on the farm where she lived. She was disabled to the extent she could not arise or return to the house in which she lived. She was found on the evening of September 4, 1942, where she had fallen and was taken by ambulance to and placed in a hospital. It was learned that she had been the victim of a brain hemorrhage. She was at times while in the hospital unconscious, irrational, and incoherent. She left the hospital September 27, 1942, and was taken by ambulance to her home. She was there cared for by Mrs. Lee Pyle, a woman of experience in nursing and caring for afflicted persons, but who was not educated or licensed as a nurse. She was for a time assisted in the work at the home of the testatrix by Bess M. Kay. Mrs. Pyle was employed to, was responsible for, and did attend to the needs of testatrix from the time she returned to her home from the hospital until her death.

The proponent offered the testimony of six witnesses as her case-in-chief. Three of them furnished no evidence concerning the will of Sarah Elizabeth Coons, herein referred to as the testatrix or deceased, or the validity of it. The testimony of Mrs. Lee Pyle, one of two attesting witnesses of the will, was to this effect: She first met the deceased at the hospital the day before she was taken from there to her home. She was em-

ployed by Edward E. Moore, a brother of the deceased, to care for her and she was paid by checks written by and received from Mrs. Moore, who signed them for the deceased. They were drawn against the account of the deceased. She did no business after she became ill. Her affairs were looked after by Mr. and Mrs. Moore. The deceased never signed her name after September 3, 1943, until her death, except she attached her name to the will. The deceased was bedfast in the hospital and after she was taken home for many weeks. She was helpless, had to be bathed, fed, and entirely cared for. It was "almost like taking care of a baby. You had to take care of her and change her bed, and do work, and cook and feed her. She was just cared for." There were weeks after she came home during which she was unable to recognize people with whom she had been acquainted or to carry on a conversation. This was her condition when the will was made October 8, 1942. Later she could sit up and she would talk about her mother as though she were living although she had been dead for many years and about her family concerning things that had transpired when deceased was a young girl. Before and for a considerable time after the will was made the deceased had substantially no conversation except to answer in the affirmative or negative when she was asked some question. She did not talk about her property or business of any kind or participate in any business matter from the time she became ill until about a year after the will was made except what she did about attempting to make her will. The witness did not see the testatrix sign the instrument claimed to be the will of the deceased. She did not know its character when she signed it as a witness. She did not know it was intended to be the will of the deceased. The witness was asked to state her opinion as to the mental capacity of the testatrix and she refused. She said she did not know. She would not say that the deceased, when she signed the will, was mentally competent and

of sound mind. The witness said if she had known that the paper she signed was a will she would not have signed it. She gave no testimony that the testatrix was of sound mind when she signed the will.

The other attesting witness to the will, Bess M. Kay, was examined. The substance of her testimony was she had known the testatrix for many years and was at her home assisting Mrs. Pyle from sometime after the deceased was taken there from the hospital and before the will was signed and until some days after it was made. She did not care for the deceased but she saw her each day. She noticed no change in the mental condition of testatrix while she was working there. The witness did not know of the testatrix saying anything about her property, any business matter, or any matter of a personal or general nature. She did not see the testatrix write or sign any check or do any business of any kind except she saw the deceased sign the will. The witness said that the deceased was sick and confined to bed, and she did not expect her to do any of those things. The witness was paid by Mrs. Moore. The witness had only one conversation with the deceased the substance of which she recalled and stated. It did not concern the will and was not of a character to indicate that deceased was of sound mind and had testamentary capacity. The witness saw the testatrix sign the will. As she remembered the incident she was requested to attest the will by the attorney who wrote it. This was in the presence of the testatrix, the attorney, and Mrs. Pyle. The witness did not express an opinion that the deceased was of sound mind when she signed the will. She did not testify to facts which would sustain a finding of testamentary capacity of the deceased.

The last witness produced by appellee in making her case-in-chief was the attorney who prepared the will and who was present when it was executed and attested. He testified only to its preparation, execution, and attestation. He respected the opinion of the court on the

first appeal and refrained from saying anything concerning the physical or mental condition of the testatrix.

This was the condition of the record when appellee submitted her case-in-chief by her rest. There was an absence of proof that testatrix was of sound mind when she made the will. The appellants by motion for this reason requested the court to instruct a verdict for them. The court refused. Appellee was required to show prima facie that the testatrix was of sound mind at the time of the execution of the will. A prima facie case is made when the party having the burden of proof has produced evidence sufficient to support a finding and adjudication for him of the issue in litigation. In re Estate of Hoagland, 126 Neb. 377, 253 N. W. 416; Mantell v. Jones, 150 Neb. 785, 36 N. W. 2d 115. A sound mind within the requirement of the statute on the subject of qualification of a person to make a will (§ 30-201, R. R. S. 1943) means the mental capacity to enable the testator to understand the nature of his act in making the will, the nature and extent of his property, the proposed disposition of it, and the natural objects of his bounty. The proponent to make a prima facie case that the testator was of sound mind when he made the will must produce evidence sufficient to support a finding that the testator possessed each of the elements of mental capacity stated above. In re Estate of Hunter, *supra,* states the rule: "The elements of mental capacity to make a will are that the testator understands the nature of his act in making the will, the nature and extent of his property, the proposed disposition of it, and the natural objects of his bounty." The proof of proponent is not sufficient to satisfy these requirements. She did not make a prima facie case that the testatrix was of sound mind at the time she made the will. The motion of appellants for a directed verdict when proponent rested her case-in-chief should have been sustained.

The attestation clause of the will recites that it was on the date it exhibits signed, published, and declared by

Sarah Elizabeth Coons to be her will in the presence of the attesting witnesses, and they at her request subscribed their names thereto as witnesses in the presence of testatrix and in the presence of each other, and that at that time the testatrix was of sound mind and free from restraint. The appellee says that the attestation clause is full and complete and she argues because of this and by the introduction of it in evidence with the will she made a prima facie case. The essence of this is a contention that if a will has a complete attestation clause, one that substantially recites the requirements of the relevant statute as to the acts required for legal execution of a will (§ 30-204, R. R. S. 1943), and a statement that the testator was of sound mind, and if the will including the attestation clause is received in evidence, a presumption of due execution by and soundness of mind of the testator results and that a prima facie case has been made for the proponent. This has not been accepted in this jurisdiction. It is contrary to the cases above referred to and many others decided by this court. It opposes what was stated in the opinion on the first appeal of this matter. In re Estate of Coons, *supra.* It is statutory that only a person of "full age and sound mind" may make a valid will. § 30-202, R. R. S. 1943. If there is no contest of the validity of a will it may be probated on the "testimony of one of the subscribing witnesses only, if such a witness shall testify that such will was executed in all the particulars as required in section 30-204, and that the testator was of sound mind at the time of the execution thereof." § 30-218, R. R. S. 1943. A prohibition appears from this that no will may be probated without evidence outside of the will and its attestation that the testator was of sound mind when he made it. This is mandatory where the will is not opposed and it must be self-evident that the requirement is not less when the legality of the will is assailed.

If the subscribing witnesses are nonresidents of the state the court may admit proof of the "handwriting of

the testator and of the subscribing witnesses" as evidence of the execution of the will but there must be "testimony of other witnesses to prove the sanity of the testator * * *." § 30-219, R. R. S. 1943. This statute does not permit the identification of the handwriting of the testator and the subscribing witnesses to satisfy the mandate that there must be testimony that the testator was of sound mind. The legislative intent emerges that proof of sound mind can never be supplied by a presumption or by the existence and contents of an attestation clause. The exaction of testimony of sound mind of the testator is exclusive. There is no substitute. It is a condition precedent to lawful probate of a will in every instance. In Seebrock v. Fedawa, 30 Neb. 424, 46 N. W. 650, it is said: "Thus it will be seen that, under the provisions of the sections above quoted, a will cannot be admitted to probate, even when no contest is entered, until it is established by the testimony that at the time of its execution the testator was of sound mind. The fact that the will is contested certainly does not change the burden * * *. It is the duty of the proponent in the first instance to offer sufficient testimony of the capacity of the testator to make out a prima facie case." That case set the pattern many years ago for proof of validity of a will: "* * * a will cannot be admitted to probate, even when no contest is entered, until it is *established by the testimony * * * the testator was of sound mind*" and "*the proponent in the first instance * * * (must) offer sufficient testimony of the capacity of the testator to make out a prima facie case.*" The doctrine of that case has not been modified or rejected. On the contrary it has been frequently approved. There is no area for argument that sound mind may be presumed from attestation recitals of a will when the statute requires, and the decisions of the court affirm and emphasize, that the proponent has the burden in all instances to produce testimony of soundness of mind of the testator.

The judgment should be and it is reversed and the

·cause is remanded to the district court for Nemaha County with directions to sustain the motion of appellants for judgment notwithstanding the verdict, and to enter a judgment in the cause denying probate of the alleged will of Sarah Elizabeth Coons bearing date of October 8, 1942, shown in the record as exhibit No. 1.

REVERSED AND REMANDED WITH DIRECTIONS.