IN RE ESTATE OF JOHN H. CHARLES.
W. A. C. JOHNSON, APPELLANT, V. GEORGE HOGG ET AL., APPELLEES.

FILED JUNE 17, 1929.   No. 26367.

*Taylor & Spikes, J. J. Ledwith, Hall, Cline & Williams, Charles Dobry* and *H. H. Foster,* for appellant.

*T. T. Bell* and *Prince & Prince, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, and THOMPSON, JJ., and ELDRED, District Judge.

ELDRED, District Judge.

This is a will contest. The proponent, W. A. C. Johnson, filed for probate in the county court of Howard county an instrument purporting to be the last will and testament of one John H. Charles, deceased, referred to in the proceedings as the Johnson will. This will appears to have been executed May 10, 1924. John H. Charles died September 23, 1926. Deceased left surviving him no widow nor children. Many years ago he changed his name from John Charles Hogg to John H. Charles. Objections to the probate of the will were filed by contestant George Hogg, a brother of John H. Charles, and Elizabeth Kemp Edington, a niece, Charles Hogg Edington and James A. Edington, nephews. The Johnson will having been denied probate by the county court, the proponent appealed to the district court. A petition for the probate of the Johnson will having been filed in the district court, the contestants again filed objections thereto, alleging that the Johnson will was executed by virtue of undue influence of said Johnson and others; that it was not the free and voluntary act of the deceased; and further alleging that the Johnson will had been revoked by an instrument purporting to have been executed September 17, 1926, which is as follows:

"I, John Charles, of the County of Howard in the State of Nebraska, being of sound and disposing mind and memory, do hereby revoke all former wills by me made, for the purpose and to the end that my property and estate shall descend to my heirs as provided by the laws of the state of Nebraska.

"In witness whereof I have hereunto subscribed my name this 17th day of September, 1926.

"John H. (X) Charles.

"We whose names are hereunto subscribed hereby certify the above John Charles signed his name to the foregoing instrument in our presence and in the presence of each of us, and declared at the same time in our presence and hearing that this instrument is his revocation of all former wills by him made, and we at his request sign our names hereto in his presence and in the presence of each other as attesting witnesses.

"James A. Edington, of Howard County, Nebraska,

"Nels Christensen, of Howard County, Nebraska."

James A. Edington, who witnessed the foregoing revocation, is a nephew of John H. Charles and one of the contestants in these proceedings.

The proponent in his reply alleges that the purported revocation was not executed as required by law, and was not properly and legally attested; that the deceased at the time of the execution of said revocation was not possessed of sufficient mental and testamentary capacity to make the same; and further, if John H. Charles executed said instrument, the same was executed as the result of fraud and undue influence practiced upon him by James A. Edington and Nels Christensen.

The trial court peremptorily instructed the jury that when the Johnson will was made it was the valid last will and testament of John H. Charles, and submitted to the jury only the question as to the validity of the revocation. On this question the court submitted three issues, which were stated in the instructions as follows: (1) Did the testator, John H. Charles, execute the alleged revocation in the manner and form as provided by law? (2) Was the testator, John H. Charles, at the time of the execution of the alleged instrument of revocation, of sound mind and memory and competent, as defined in these instructions, to execute said revocation? (3) Was said instrument the free and voluntary act of the said John H. Charles, or was said

instrument procured to be executed by him by fraud, undue influence and misrepresentation of James A. Edington and Nels Christensen?

The jury returned a verdict in favor of the contestants, finding that the Johnson will had been revoked by the revocation will, and that it should be denied probate. Judgment was entered on verdict denying probate of the Johnson will. Motion for new trial having been overruled, proponent appeals. No cross-appeal has been filed.

While appellant's brief contains eleven assignments of error, only four propositions are really presented: (1) Error in the admission in evidence of the alleged revocation; (2) error in ruling on evidence proffered; (3) error in giving instruction No. 29; and (4) insufficiency of evidence to sustain verdict.

■ It is urged that the revocation will was not executed according to law, in that its execution was not attested by two competent witnesses. In connection with this specification of error two propositions of law are presented: (1) The alleged revocation is void if not attested by two competent witnesses; and (2) an interested heir is not a competent witness to the revocation of a will.

With the first proposition no issue is taken by contestants. As to the second proposition contestants urge that, though the witness James A. Edington might be an heir of deceased, that did not disqualify him as a witness to the revocation. This is really the crucial point in this case. James A. Edington was not given any property by the Johnson will. He was not given any property by the instrument referred to as the revocation; but as an heir, if there was no will, he might be entitled to share in the estate of the deceased.

The execution of wills and revocations is governed in this state by the statutory provisions which follow:

"No will made within this state, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to change, or in any way affect the same, unless it be in

writing, and signed by the testator, or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses; and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will, if it be otherwise satisfactorily proved." Comp St. 1922, sec. 1245.

"All beneficial devises, legacies, and gifts whatsoever, made or given in any will, to a subscribing witness thereto, shall be wholly void, unless there be two other competent subscribing witnesses to the same; but a new charge on the lands of the devisor for the payment of debts shall not prevent his creditors from being competent witnesses to his will." Comp. St. 1922, sec. 1248.

"But if such witness, to whom any beneficial devise may have been made or given, would have been entitled to any share of the estate of the testator, in case the will was not established, then so much of the share that would have descended or have been distributed to such witness, as will not exceed the devise or bequest made to him in the will, shall be saved to him, and he may recover the same of the devisees or legatees named in the will, in proportion to and out of the parts devised or bequeathed to them." Comp. St. 1922, sec. 1249.

"No will, nor any part thereof, shall be revoked, unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this article; or by some other writing signed, attested and subscribed in the manner provided in this article, for the execution of a will; excepting only, that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the conditions or circumstances of the testator." Comp. St. 1922, sec. 1250.

The revocatory instrument in this case falls within the

provisions of the last section, that a will may be revoked "by some other writing signed, attested and subscribed in the manner provided in this article, for the execution of a will." The will must be signed by the testator, or by some one in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses.

Section 1248, Comp. St. 1922, in treating the subject of the competency of a witness who may be a devisee or legatee under a will does not provide that a will shall be void which may have been witnessed by such devisee or legatee. It merely provides: "All beneficial devises, legacies, and gifts whatsoever, made or given in any will, to a subscribing witness thereto, shall be wholly void, unless there be two other competent subscribing witnesses to the same," while section 1249, Comp. St. 1922, provides under what circumstances an interest in an estate as an heir may be saved to such subscribing witness.

Appellant suggests in his brief that, as one of the heirs of testator, James A. Edington would reap a direct, substantial and pecuniary advantage by the establishing of the revocation, and urges that a person with such an interest is not a competent witness.

We have no statutory provision disqualifying any person as a witness on account of interest.

"Every human being of sufficient capacity to understand the obligations of an oath, is a competent witness in all cases, civil and criminal, except as otherwise herein declared." Comp. St. 1922, sec. 8835. Neither an interested person nor witnesses to wills are included within the exceptions to the provision quoted.

Counsel for appellant suggests that the section quoted is procedural as distinguished from substantive law, and that the requirement for two competent witnesses is a part of the substantive law of wills. But, the provision for the attestation of wills does not disqualify an interested witness; the only effect being that as to such witness all devises, legacies or gifts of such subscribing witness shall be void in

excess of the share of the estate of the deceased that would have descended or been distributed to such witness in case the will was not established. The will is valid in other particulars. Sections 1248, 1249, *supra*. The meaning of the provision referred to is plain. Nobody but an heir would be entitled by descent to any share of the estate of the testator in the event a will was not established. This statute must be held to contemplate that an heir may become a competent witness to a will, but that he forfeits any right thereunder.

Appellant cites a line of decisions beginning with *Child v. Baker,* 24 Neb. 188, defining who are competent witnesses to deeds and some other transactions, in support of his contention that an interested witness is not a competent witness. These cases are readily distinguishable from the instant case in that we are here considering a statute embodying a legislative determination as to just what effect the attesting of a will by an interested witness should have upon the validity of such instrument.

"The term 'competent witness,' as used in the statute relating to the execution of wills, means a person who, at the time of making the attestation, could legally testify in court to the facts which he attests by subscribing his name to the will." *In re Estate of Wiese,* 98 Neb. 463; *Hayden v. Hayden,* 107 Neb. 806. The first cited case lays down the rule that a devisee may be a competent subscribing witness to a will. In the opinion in *Hayden v. Hayden, supra,* the following language is aptly used: "The statute defining the competency of witnesses has, and was obviously intended to have, a far-reaching application. It has been in force since 1866, and has been the source of frequent application, directly and indirectly. In *Sorensen v. Sorensen,* 56 Neb. 729, this court announced that, 'under our system of jurisprudence every person is *prima facie* a competent witness in all cases, both civil and criminal,' and it was therein further held that the incompetency of one as a witness, or the incompetency of his evidence, must be found in express law, and not based on strict or technical construction, and it was stated in the opinion: 'To disqualify a person from testify-

ing by reason of incompetency, he must fall within some one or more of the exceptions expressly provided by statute.'" Further, it is well said in the opinion just referred to: "The language 'two other competent' witnesses implies that a devisee or one receiving a beneficial gift is competent; and the section does not say or imply that the will is void, for the reason that one of the witnesses is a devisee or interested. The plain purport of the section is that a will so witnessed is valid."

Appellant urges that the authorities cited above are not in harmony with many authorities from this and other jurisdictions cited in the brief of his counsel. Much research is indicated in the collation and review of authorities. These largely treat of the subject either in the absence of statutory provisions, or arise under statutory provisions entirely unlike those of our state.

The case of *Pfaffenberger v. Pfaffenberger*, 189 Ind. 507, is cited by appellant, and it is stated in his brief: "This case on its facts is the one case in all the reports that is closest to the case before us. It squarely and directly decides that an heir is an incompetent attesting witness to a revocation."

That case having thus been particularly emphasized by appellant, it is specially reviewed here. In that case the court did not hold the will so attested to be void, but void only as to the interested witness; the court further holding that beneficiaries who did not attest a will may compel an interested attesting witness to prove the will, that it may not fail as to them, and for such purposes the interested witness was competent. In that case there was no person interested in or benefited by the revocatory will, other than the defendant, who was an attesting witness; while in the case at bar there are a number of other heirs who are interested in the will in question and who are parties to this suit. In that case the deceased left only two heirs, the plaintiff, a sister, and the defendant, a half brother. In 1907 the testator made a will whereby she devised all her property to her sister, the plaintiff. In 1913 she executed

another will revoking the prior will, and further by that instrument giving the half brother, the defendant, an equal share in her property. The last will was attested by the defendant as one of the two witnesses. The requirement of the Indiana statute as to the execution and attestation of wills and revocations is practically the same as Nebraska; while in some other particulars it is so materially different that the case is not of much value as an authority in the instant case. It turns largely upon the interpretation of the statutory provisions of that state. The reasoning in that case is not inconsistent with the conclusions reached by this court in the cases heretofore cited.

Page on Wills (2d ed.) is also cited by appellant in support of his contention that an interested witness is not a competent witness, and the text of section 305 of that work appears to support such theory; but, by reference to the footnote under that section, it will be seen that the only authority cited by the author for the text of that section is the case of *Pfaffenberger v. Pfaffenberger, supra,* which, as has been pointed out, is not inconsistant with previous holdings of this court.

We have considered the other authorities cited, but an extended review of them could serve no useful purpose. We are satisfied with the conclusions reached by this court in the cases heretofore cited, and adhere to the holdings therein announced, believing, as we do, that they are in harmony with the intention of the legislature, and that substantial justice is attained thereby.

It seems to us that the material issue here involved is settled by the statutes of this state, as well as by the decisions of this court, and is no longer an open question. We conclude that the revocation will was properly received in evidence. What effect the witnessing of the revocation by one of the heirs of the deceased may have in determining who are entitled to share in the distribution of the estate of the deceased is not now before this court, and no opinion is expressed thereon.

■ The trial court refused to allow Nelson Scott and

Mrs. Alfred Reimers, nonexpert witnesses, to state their opinions as to the mental capacity of the deceased. Objections were sustained for want of foundation, due to the witnesses not having detailed in court the facts and circumstances on which the opinions were based. The reason for the ruling was called to the attention of the parties at the time. We have examined all the testimony of these witnesses and conclude that the rulings of the court complained of were clearly correct. "Nonexpert witnesses can be permitted to express opinions as to the sanity or insanity of a person only when they have shown other sufficient qualifications, and have stated the facts and circumstances upon which their opinion of mental condition is based." *Bothwell v. State,* 71 Neb. 747.

■ Appellant contends that by instruction No. 29 the jury were told that, if the revocation was executed because of undue influence, or fraud, the Johnson will was not good. We do not so interpret the instruction. Instruction No. 28 sets forth the issues essential to proponent's recovery; while instruction No. 29 sets forth issues essential to contestants' recovery, as follows:

"You are instructed that if you find from a preponderance of the evidence that the testator executed the revocation of his will which has been introduced in evidence in manner and form as required by law, and that at the time he so executed it he had testamentary capacity and a revoking mind, as explained in these instructions, and if you also fail to find from a preponderance of the evidence that at the time he signed said revocation he was not acting freely and voluntarily, but signed said instrument because of the undue influence or fraud of said James A. Edington and Nels Christensen, then your verdict should be for the contestants and said will will not be admitted to probate."

It will be seen that the first part of this instruction embodies the matters as to which the burden of proof was on the contestants; while the latter part of the instruction relates to matters as to which the burden of proof was on

644

proponent; and the jury are advised that they must find the establishment of the matters set forth in the first part of the instruction, in conjunction with a failure to establish the matters set forth in the latter part thereof, before contestants could recover. We fail to see how a jury could be misled by the language used. Its meaning seems clear, and particularly so when read in connection with the preceding instruction. If the appellant was of the opinion that the instruction was not explicit enough, another and further instruction thereon should have been tendered. *Cornforth v. Graham Ice Cream Co.*, 109 Neb. 426.

■ Finally, it is urged that the evidence is insufficient to sustain the verdict of the jury. The testimony taken on the trial is voluminous and space will not permit a review of it here. On examination we conclude that there is such a conflict in the evidence on the questions submitted that different minds might reasonably draw different conclusions therefrom. The issues of fact under the conditions of the evidence were peculiarly questions for the jury's determination. The trial court would not have been justified in withdrawing those issues from the jury. The issues were fairly submitted by the instructions of the court, and with the conclusion reached this court should not interfere.

AFFIRMED.

Note—See Evidence, 22 C. J. 606 n. 17, 607 n. 28—Trial, 38 Cyc. 1537 n. 45, 1694 n. 57—Wills, 40 Cyc. 1111 n. 55; 28 R. C. L. 133; 5 R. C. L. Supp. 1515; 11 R. C. L. 620; 2 R. C. L. Supp. 1282.