IN RE ESTATE OF HERMAN A. R. CAMIN, DECEASED. MARTIN ACHTERBERG ET AL., APPELLANTS, V. FARMERS STATE BANK & TRUST COMPANY, LEXINGTON, NEBRASKA, ET AL., APPELLEES.

323 N.W.2d 827

Filed August 20, 1982. No. 44233.

Kenneth Cobb and Dale E. Dahlin of Law Offices of Kenneth Cobb, P.C., for appellants.

M. J. Bruckner of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

This is an appeal from a judgment of the District Court for Custer County admitting to probate the last will and testament of the decedent, Herman A. R. Camin, following a jury verdict in favor of the proponents. The appellants have assigned numerous errors on this appeal, including that the proponents of the will failed to establish a prima facie proof of testamentary capacity of the decedent by failing to present the testimony of all the available attesting witnesses of the will; that the attestations of the attesting witnesses were invalid and ineffective; that the trial court erred in admitting into evidence prior wills executed by the decedent; that the trial court erred in limiting the appellants' cross-examination of a witness; and, finally, that the trial court erred in instructing the jury and in submitting an improper standard for testamentary capacity in the verdict of jury form. Upon consideration of these various assignments of error, we affirm.

The decedent, Herman A. R. Camin, died at the age of 77 on July 16, 1979, in Custer County, Nebraska. The petition for formal probate of his last will

and testament was filed in county court on the following day by Bernard Smith as attorney for the petitioners, Melvin, Herman, and Martin Achterberg, and the Farmers State Bank & Trust Company. The terms of this will, which was executed on February 1, 1979, appointed several personal representatives and instructed them to liquidate the assets of the estate at public auction. Following the payment of all taxes and expenses from the proceeds of the auction, the will set forth specific monetary bequests of $1,000 each to 12 of the decedent's relatives, and of $750 each to six of the relatives of the deceased wife of decedent. Finally, the will established a trust for the benefit of the Trinity Evangelical Lutheran Congregation of the Unaltered Augsburg Confession Church of Lexington, Nebraska, in which the residue of the estate was to be placed. The will also established a formula for the distribution of the principal and income of the trust to the church over a period of years, under the direction of a designated trustee. At the time this document was drafted, the decedent allegedly valued his estate, which consisted of land and numerous certificates of deposit, at approximately $1,000,000.

The contestants filed their objections to the probate of the will on August 10, 1979, alleging that the decedent was not of sound mind or mentally capable of making a will, and that "on the date of said purported will and for a long time prior thereto and continuously thereafter until his death said decedent was not competent to make a last will and testament." Nevertheless, the Custer County Court admitted the will to formal probate on October 5, 1979. An appeal was taken to the District Court wherein the issue of the decedent's competency was tried to a jury, which found that the document executed on February 1, 1979, "is a valid Last Will and Testament and the said deceased was mentally competent

at the time he signed the same." This appeal followed that verdict.

The appellants' first assignment of error challenges the manner by which the proponents attempted to prove a prima facie case in support of the decedent's testamentary capacity. By statute, the proponents of a will have the burden of establishing prima facie proof of testamentary capacity, as well as the ultimate burden of persuasion as to that matter. Neb. Rev. Stat. § 30-2431 (Reissue 1979). However, this section does not go forward to describe the manner by which such prima facie proof must be presented. In this respect, the provisions of Neb. Rev. Stat. § 30-2430(b) (Reissue 1979) appear to be directly applicable. This section provides in part that *"If the will is self-proved,* compliance with signature requirements for execution is conclusively presumed and *other requirements of execution are presumed subject to rebuttal without the testimony of any witness upon filing the will* and the acknowledgment and affidavits annexed or attached thereto, unless there is proof of fraud or forgery affecting the acknowledgment or affidavit." (Emphasis supplied.) The instrument in the present action was executed by the decedent and attesting witnesses in a manner consistent with the provisions of Neb. Rev. Stat. § 30-2329 (Reissue 1979), and consequently qualifies as a "self-proved" will as that term is used in the statutory provisions governing probate in Nebraska.

The appellants contend that the proponents failed to establish prima facie proof of the decedent's testamentary capacity due to their failure to offer the testimony of all of the available attesting witnesses, or, in lieu thereof, in failing to offer evidence of their unavailability. The record reveals that the proponents called only one of the three attesting witnesses during the trial of this matter and that the remaining two witnesses were available to present their testimony at trial. The appellants base their

contention that such a failure to call the attesting witnesses causes the proponents to fall short of the requisite prima facie proof of testamentary capacity upon the cases of *In re Estate of Coons,* 154 Neb. 690, 48 N.W.2d 778 (1951); *First Trust Co. v. Lanyon,* 156 Neb. 21, 54 N.W.2d 262 (1952); and *Moore v. Moore,* 158 Neb. 620, 64 N.W.2d 301 (1954).

Although the appellants have accurately stated the law of those cases, they appear to have failed to realize the total impact of the probate reform which took place in 1974 with the passage of L.B. 354. The aforementioned cases were adjudicated prior to the passage of L.B. 354, at a time when the law required the testimony of one subscribing witness to probate a will in an uncontested action. Neb. Rev. Stat. § 30-218 (Reissue 1964). This court in *In re Estate of Coons, supra,* found that this provision gave rise to a strong inference that all available witnesses must testify in a contested case, and consequently it promulgated a rule which provided that "a proponent is required to present all attesting witnesses if their testimony is available, otherwise a prima facie case is not made." *Id.* at 695, 48 N.W.2d at 781. We note, however, that § 30-218 was repealed by L.B. 354, and that the only statutory requirement for the testimony of an attesting witness appears in § 30-2430(a), which applies only to wills that are not "self-proved." Therefore, it is understandable that some confusion exists as to whether one must call every available attesting witness to a self-proved will in a contested case.

The commentary appearing after each section of the statutes governing probate provides some insight into this matter. With regard to a self-proved will, the Comment notes in part that "A self-proved will may be admitted to probate as provided in sections 30-2416, 30-2429 and 30-2430 without the testimony of any subscribing witness, but otherwise it is treated no differently than a will not self-proved.

Thus, a self-proved will may be contested (except in regard to signature requirements), revoked, or amended by a codicil in exactly the same fashion as a will not self-proved." § 30-2329. The Nebraska Comment to the section expressly dealing with the testimony of attesting witnesses states that *"This section changes prior Nebraska law* which required court testimony from one witness even if there was no will contest and that in the event of a will contest, it was indispensible [sic] that all available attesting witnesses be called to testify. See repealed section 30-218; In re Estate of Coons, 154 Neb. 690, 48 N.W.2d 778 (1951)." (Emphasis supplied.) § 30-2430. Finally, the Nebraska Comment to the section dealing with the allocation of the burden of proof in a will contest states that the "Nebraska modification of the section retains the previous requirement that the proponent of a will has the burden of establishing testamentary capacity. In re Estate of Coons, 154 Neb. 690, 48 N.W.2d 778 (1951); In re Estate of Kaiser, 150 Neb. 295, 34 N.W.2d 366 (1948)." § 30-2431.

When one analyzes the commentaries, the cases cited therein, the Uniform Probate Code, upon which the Nebraska probate laws were in part based, and the enacted provisions of the probate law, little confusion remains as to the issue at hand. We stated in *In re Estate of Kaiser,* 150 Neb. 295, 302-03, 34 N.W.2d 366, 372 (1948), that "This court has consistently held that the burden is upon proponent of a will, both in the county court and in the district court on appeal, to prove by a preponderance of the evidence not only the lawful execution of the will, but also the testamentary capacity of the testator at the time when the will was made. However, if the proponent makes a prima facie case in chief as to both, then it devolves upon a contestant to proceed and adduce sufficient competent evidence to overcome the presumption arising therefrom, after which the burden of going ahead and proving those issues by a

preponderance of the evidence devolves upon proponent." This proposition of law was reiterated in *In re Estate of Coons, supra.* However, the Uniform Probate Code provided that "Contestants of a will have the burden of establishing lack of *testamentary intent or capacity,* undue influence, fraud, duress, mistake or revocation." (Emphasis supplied.) Unif. Prob. Code § 3-407, 8 U.L.A. 411 (1972). Finally, when enacted as a part of L.B. 354 and codified as § 30-2431, the section dealing with the burden of proof was modified so as to comport with the adjudicated law of Nebraska by placing the burden of proving capacity upon the proponent. It is quite clear that this is the only portion of *In re Estate of Coons, supra,* that was meant to be preserved by § 30-2431.

This conclusion is made all the more apparent by the express provisions of § 30-2430 and the comments thereafter. By enacting the self-proved will provisions, the Legislature was expressly nullifying the requirement that all attesting witnesses must be called in order to provide prima facie proof of testamentary capacity as called for under *In re Estate of Coons, supra,* and its progeny.

Therefore, the state of the law in Nebraska regarding this issue is similar to that which exists in the State of Texas where, under similar probate provisions dealing with self-proved wills and the burden of proof, the court noted with reference to these sections that "We believe that the two sections of the Code [probate code] provide nothing more than a method for the proponent of a will to prove his testator's testamentary capacity, *prima facie,* without the necessity of obtaining the testimony of the subscribing witnesses. . . . It appears to be the more cogent reasoning that a self-proving affidavit attached to a will allows a proponent a manner of proof in which to make out a *prima facie* case, but does not remove from him the burden of proving the

testamentary capacity of his testator. As a matter of law he still belabors under that burden, but once he has produced the self-proved will into evidence, the contestant, to rebut the presumption, must go forward with his evidence." *Reynolds v. Park,* 485 S.W.2d 807, 816 (Tex. Civ. App. 1972). See, also, *Soto v. Ledezma,* 529 S.W.2d 847 (Tex. Civ. App. 1975).

Similarly, under the probate provisions in Nebraska, as amended in 1974 and thereafter, a prima facie proof of the testator's testamentary capacity is established by the introduction of a self-proved will without the presentation of the testimony of all of the attesting witnesses. Such prima facie proof is rebuttable with competent evidence to the contrary, and the burden of persuasion remains with the proponent of the will at all times. Therefore, the proponents in the present action successfully established prima facie proof of the decedent's testamentary capacity through the offer of the self-proved will and the testimony of Bernard Smith, an attesting witness who testified that the decedent possessed sufficient capacity to execute a will at the time this instrument was executed. It was not necessary to call the remaining attesting witnesses, although they may have been available to testify.

We turn next to the appellants' second assignment of error wherein the appellants challenge the validity of the attesting witnesses' signatures on the basis that two of the attesting witnesses did not have sufficient knowledge on which to base their attestations that the decedent possessed testamentary capacity at the time he executed the purported will. This contention is based upon the depositions of these witnesses, wherein each admitted merely observing the decedent sign the will and having had no discussions with the decedent concerning his knowledge of his estate or heirs.

The appellants have cited the following language from *In re Estate of Kaiser,* 150 Neb. 295, 34 N.W.2d

366 (1948), and *In re Estate of Smith,* 130 Neb. 739, 266 N.W. 611 (1936), in support of this assignment of error: "The statutory provisions controlling the manner in which wills must be executed are generally held to be mandatory and subject to strict construction, and if not substantially complied with, the will is inoperative. [Citations omitted.] . . . 'The attestation required of witnesses to a will consists in their seeing that those things exist and are done which the statute requires to exist or to be done in order to make the instrument, in law, the will of the testator. [Citation omitted.]' " *In re Estate of Kaiser, supra* at 303, 34 N.W.2d at 372. However, in both instances the "statutory provisions" referred to were those provisions which required that a will be "signed by the testator, or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses . . . ." Comp. Stat. § 30-205 (1929); Neb. Rev. Stat. § 30-204 (1943). Consequently, the requirement that an attesting witness abide by the statutory provisions does not necessarily mandate that the witness inquire into the testator's mental capacity.

Similarly, the present probate code merely requires a will to be signed "by the testator or in the testator's name by some other individual in the testator's presence and by his direction, and is required to be signed by at least two individuals each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will." Neb. Rev. Stat. § 30-2327 (Reissue 1979). Furthermore, the code provides that "Any individual generally competent to be a witness may act as a witness to a will." Neb. Rev. Stat. § 30-2330(a) (Reissue 1979). Finally, we note that the attestation clause to the will in question conforms with the provisions of § 30-2329, in that it merely states that the attesting witness believes "to the best of his knowl-

edge" that the testator is of sound mind. Clearly, the statutes remain devoid of any requirement that the attesting witness must probe into the testator's mental capacity prior to signing the will as a witness.

However, we have held in the past that " 'The term "competent witness," as used in the statute relating to the execution of wills, means a person who, at the time of making the attestation, could legally testify in court to the facts which he attests by subscribing his name to the will.' *In re Estate of Wiese,* 98 Neb. 463 [153 N.W. 556 (1915)]; *Hayden v. Hayden,* 107 Neb. 806 [186 N.W. 972 (1922)]." *In re Estate of Charles,* 118 Neb. 634, 640, 225 N.W. 869, 871 (1929). At issue in these cases was whether an heir, devisee, spouse of a devisee, or an executor of an estate could be deemed a "competent witness" to a will. At no point, however, have we been called upon to determine whether a will attested to by witnesses who admittedly were unaware of the testator's testamentary capacity has been properly executed.

With respect to one who is "legally" qualified to testify in court, the appellants have cited *Thomas v. Vaughan,* 181 Neb. 673, 679, 150 N.W.2d 241, 245 (1967), wherein we stated that "A nonexpert witness who is shown to have had a more or less intimate acquaintance with a person may be permitted to state his opinion as to the mental condition of that person by giving the facts and circumstances upon which the opinion is based. Schlitz v. Topp, 158 Neb. 583, 64 N.W.2d 116. It must appear that the witness has in mind the quality of mental capacity essential to the making of a valid will and that the facts and circumstances testified to are sufficient upon which to base an opinion. In re Estate of Witte, 145 Neb. 295, 16 N.W.2d 203." In fact, as a matter of law, "A witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that he

has personal knowledge of the matter." Neb. Rev. Stat. § 27-602 (Reissue 1979).

When taken in the context set forth above, it may appear that the attesting witnesses to the present will would not have been "legally" qualified to testify at trial as to the question of the decedent's testamentary capacity at the time the will was executed. This conclusion is made in light of the fact that the record does not reveal that each attesting witness possessed personal knowledge regarding the decedent's testamentary capacity. We must note, however, that the witnesses were not asked during their depositions whether they did indeed possess such knowledge at the time they witnessed the will.

We also note that a sufficient number of other jurisdictions have been faced with a similar issue to enable one commentator to draw the following purported "general rule": "Despite the very generally recognized duty of attesting witnesses to observe or satisfy themselves as to the testator's capacity, their failure to do so, or their failure to recollect their impression, has generally been held, at least in the absence of specific statute, not to affect the validity of the will, or to affect their competency to testify as to the testator's capacity in probate proceedings or will contests, even though the credibility or weight of their testimony may have been held or recognized to have been affected thereby." Annot., 69 A.L.R.2d 662, 664 (1960). Of those jurisdictions having addressed the issue, the general consensus appears to be that "while it is highly desirable that one attesting a will should observe and satisfy himself as to the testamentary capacity of the testator, it is not a duty imposed by law, the omission of which renders the will invalid." *In re Mitchell's Estate,* 41 Wash. 2d 326, 345, 249 P.2d 385, 396 (1952). See, also, *Strahl v. Turner,* 310 S.W.2d 833 (Mo. 1958); *In re Estate of Wognum,* 279 So. 2d 66 (Fla. App. 1973), *cert. denied* 284 So. 2d 216 (Fla. 1973). It is of special interest

that the opinion in *Strahl v. Turner, supra,* cited *In re Estate of Charles, supra,* for a definition of "competent witness," although the court appeared to narrow this definition to those witnesses who would be disqualified to testify in a court by reason of mental incapacity, interest, the commission or conviction of a crime, want of religious belief, or other causes. Consequently, it does not appear that the court in *Strahl* considered the lack of personal knowledge to be a sufficient factor to disqualify a witness from testifying in court. As noted above, such a lack of personal knowledge will disqualify a witness from testifying in a court in the State of Nebraska. § 27-602.

In addressing this express issue for the first time, the court is not unmindful of the general practice among the bar when obtaining the necessary attesting witnesses to draw on members of their staffs or fellow attorneys. Many of these persons generally will not have the type of personal knowledge of the testator's capacity, and most certainly would not have a "more or less intimate acquaintance" with the testator, as *Thomas v. Vaughan, supra,* and the appellants would demand. To require that all attesting witnesses become more or less intimately acquainted with the testator before they can be considered "competent" witnesses to a will would be burdensome, if not unworkable. Consequently, we find that we must agree with the court in *In re Estate of Wognum, supra* at 69, when it stated that "While it may be good form in some instances for a witness to explore with the testator the latter's testamentary capacity, the nature of the document, and its voluntary character, such in our opinion is not essential to qualify as an attesting witness under § 731.07 [the counterpart to § 30-2327]. The legislature has not seen fit to impose such requirements on one who would serve as a witness to a will, and in our judgment it would be unwise to do so by judicial opinion because such would inevitably

lead to the destruction of wills, to say nothing of the reasonable expectations of one's testamentary beneficiaries."

Therefore, we conclude that the present will was not invalid due to the fact that the attesting witnesses may not have possessed personal knowledge of the decedent's testamentary capacity. However, this does not mean that such a lack of personal knowledge might not prevent an attesting witness from testifying at trial due to § 27-602, and, in any event, an attesting witness' lack of personal knowledge can certainly be used to decrease the weight given to that witness' testimony should he testify at trial. However, for the purpose of this appeal, we find the appellants' second assignment of error to be without merit.

The appellants' third assignment of error alleges that it was error for the trial court to admit several prior wills of the decedent into evidence. The record reveals that seven wills were introduced into evidence during the trial, including the purported final will, which was executed on February 1, 1979. The other wills which were introduced were executed on January 3, 1979, December 30, 1976, November 18, 1969, April 14, 1965, May 22, 1964, and February 15, 1957. Error is assigned as to the admission of each will except for the one executed on November 18, 1969, which was offered by the appellants.

The court has adopted the following rule on other occasions: " 'A prior will, executed when the testator's testamentary or mental capacity was and is unquestioned, and as to which the existence of undue influence is not charged, and which conforms substantially as to results produced to the instrument contested, may be considered as competent evidence for the purpose of refuting charges of undue influence or want of testamentary or mental capacity by showing that the testator (and grantor) had a constant and abiding scheme for the distribution of his

property.' " *In re Estate of Bose,* 136 Neb. 156, 173-74, 285 N.W. 319, 329 (1939). See, also, *Blochowitz v. Blochowitz,* 122 Neb. 385, 240 N.W. 586 (1932); *In re Estate of Wahl,* 151 Neb. 812, 39 N.W.2d 783 (1949). An essential element of this rule was pointed out in an earlier sentence in *Bose* wherein we noted that prior wills, "as to which there are no substantial claims of testamentary incapacity," may also be considered in determining the question of testamentary capacity. *In re Estate of Bose, supra* at 170, 285 N.W. at 327.

In the present action the appellants raised the question of the decedent's testamentary capacity in the following manner in their petition objecting to probate: "[T]he undersigned objectors and contestants: . . . 4. Allege that on the date of said purported will *and for a long time prior thereto* and continuously thereafter until his death said decedent was not competent to make a last will and testament." (Emphasis supplied.)

As noted earlier, the proponents of a will bear the burden of persuasion as to the matter of the decedent's testamentary capacity. The proponents also must bear the burden of providing adequate foundation for the admission of prior wills which they offer into evidence, including the establishment of the fact that the testator possessed adequate testamentary capacity at the time the prior wills were executed. We conclude that the proponents met that burden in the present instance, and that therefore it was not error to admit the prior wills into evidence.

At the point when the January 3, 1979, will was offered into evidence by the proponents, Bernard Smith, the drafter of that specific document, had described numerous details contained in that will during both direct and cross-examination, without objection by the appellants. Furthermore, Mr. Smith had also testified to the fact that he had known the decedent for at least 30 years and saw him from

three to seven times a year; that he had prepared at least five wills for the decedent, including the one at issue; and, most importantly, that, in Mr. Smith's opinion, the decedent possessed the requisite testamentary capacity to execute a will. The January 3, 1979, will was admitted on the basis of this testimony.

The introduction of the remaining wills to which the appellants object did not occur until after the presentation of the contestants' case, during which the contestants called a total of 17 witnesses, 12 of whom offered their opinion that the decedent was not competent to make a will. We must note, however, that 9 of these 12 witnesses offering opinions on the decedent's capacity were related to the decedent in some respect and stood to inherit sizable amounts of money in the event the will was denied probate. Furthermore, the opinions as to the decedent's capacity were offered in response to questions concerning the decedent's ability to execute a will between December 1978 and March 1979. In that respect, the evidence offered by the contestants fails to address the question of whether the decedent was competent at the time these prior wills were executed, other than the one executed on January 3, 1979.

In rebuttal, the proponents offered the testimony of a bank president who had been the decedent's friend and banker for 30 years; a doctor who had seen the decedent at least monthly since 1956; a banker who had met the decedent in 1979 to discuss trusts; the person who had prepared the decedent's taxes "for years"; a rancher who had rented pasture from the decedent since 1963; and the pastor of the Trinity Lutheran Church, the beneficiary of the residual trust in the will at issue. An opinion as to the decedent's testamentary capacity was elicited from each witness, and each felt that the decedent was indeed capable of executing a valid will. While

many of these opinions were also limited to the period between December 1978 and March 1979, it was the opinion of Dr. Melvin Chaloupka, who had known the decedent as a friend and a patient since 1956, that the decedent was never at any time incompetent to make a will. Furthermore, Dr. Chaloupka executed an affidavit shortly before the execution of the 1976 will in which he stated that the decedent was, in his opinion, aware of the nature of his estate and was acquainted with his relatives. It was only after the doctor's testimony and the introduction of the affidavit that the remaining wills were introduced into evidence.

We have frequently held that " 'The mental capacity of a testator is tested by the state of his mind at the time he executed his will. If the testator knows the extent and character of his property, the natural objects of his bounty, and the purposes of his devises and bequests, he is mentally competent to make a will.' " *In re Estate of Kleeb,* 211 Neb. 763, 767, 320 N.W.2d 459, 461 (1982). The record in the present action presents conflicting evidence regarding the decedent's testamentary capacity at the time the January 3 and February 1, 1979, wills were executed. However, in the face of Dr. Chaloupka's testimony, there is no conflict regarding the decedent's capacity prior to 1978. Consequently, the proponents adequately established the fact of the decedent's capacity at the time he executed the wills in 1976, 1965, 1964, and 1957, and it was not error for the court to allow their admission into evidence under the rules set forth in *In re Estate of Bose,* 136 Neb. 156, 285 N.W. 319 (1939). Furthermore, with regard to the admission of the January 3, 1979, will, we note that " 'The exercise by the trial court of its discretion in ruling on the admission or rejection of evidence will generally not be reviewed by an appellate court, unless it is clearly or plainly shown that the trial court abused its discretion.' " *Westover v.*

*Kerr,* 168 Neb. 494, 498, 96 N.W.2d 421, 424 (1959). From the conflicting evidence concerning the decedent's testamentary capacity at the time he executed the January 1979 will, we cannot say that it was a clear abuse of discretion for the trial court to have admitted the will into evidence. Therefore, the appellants' third assignment of error is also without merit.

For their fourth assignment of error, the appellants contend that it was error for the trial court to have limited the cross-examination of the pastor of the Trinity Lutheran Church concerning the church's annual budget. Such questioning was objected to on the grounds of relevancy, and the objection was sustained. The appellants claim that they were prejudiced by this action, in that the church's annual budget was far less than the annual bequest the church was to receive under the terms of the residual trust, which fact was offered to show that the decedent was totally unaware of the extent of his estate and the nature of the bequest he had made to the church.

'' 'The receipt or rejection of collateral evidence is largely within the discretion of the trial judge, and his rulings in that regard will rarely be disturbed.' [Citations omitted.]'' *Barry v. Anderson,* 89 Neb. 332, 334, 131 N.W. 591, 592 (1911). Furthermore, "It is the general rule that a party should not be permitted to cross-examine a witness as to matters foreign to the scope of the direct examination, particularly where it relates to matters that are collateral to the issues in the case. In such situations a party is usually required to call the witness as his own and thus present the evidence material to the case. Where the cross-examination is within the scope of the issues, the trial court has a discretion as to the extent of the cross-examination to be permitted and it is only an abuse of such discretion that constitutes prejudicial error. . . . The extent of cross-examination to be permitted in testing the ac-

curacy and credibility of the witness usually poses a matter of discretion by the trial court. . . . 'The rule of strict cross-examination has been adopted and is in force in this state. The ruling of the trial court in regard to the scope of cross-examination will be sustained unless it is an abuse of discretion.' " *Beranek v. Petracek,* 184 Neb. 516, 520, 169 N.W.2d 275, 278 (1969).

In light of these general rules we cannot say that the trial court abused its discretion in limiting the cross-examination of the witness, thereby prohibiting the admission of evidence concerning the annual budget of the Trinity Lutheran Church. The objection to the questioning was based upon relevancy. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 1979). However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury. Neb. Rev. Stat. § 27-403 (Reissue 1979); *Herman v. Midland Ag Service, Inc.,* 200 Neb. 356, 264 N.W.2d 161 (1978).

The very definition of "relevancy" makes it apparent that it was not error to exclude the pastor's testimony. The mere fact that one's bequest to a church exceeds the budget of the church by any amount does not make it more or less probable that the testator did not know the extent of his estate. The size of one's bequest to a church may only show the testator's charitable nature, or, as is apparent in the present action from the decedent's conversations with his attorney during the drafting of this will, the testator's concern with burdensome federal estate taxes. The probative value of the pastor's testimony was so little in this instance that even were we to find that it was error to exclude it, the error would

not have been prejudicial to the appellants' cause. Consequently, we find no merit to the fourth assignment of error.

The final assignments of error concern the instructions and verdict of jury forms submitted to the jury. The verdict of jury forms submitted to the jury required the jury to find the will valid should they find the deceased was "mentally competent" when he executed the will, or to find that the will was invalid if they found the decedent to be "mentally incomptent [sic]."

In so alleging, the appellants accurately point out that the proper standard by which one's ability to execute a will is judged is not "mental competence," but, rather, it is whether one is of "sound mind" or possesses "testamentary capacity." Neb. Rev. Stat. §§ 30-2326 and 30-2431 (Reissue 1979). Throughout its instructions to the jury, the trial court frequently used the terms "testamentary capacity" and "sound mind," while only using "mental capacity" on one occasion. Therefore, the verdict of jury form may very well have been erroneous in its use of the term "mental competence."

However, the appellants' only basis for alleging that it was prejudicial error to submit such a verdict form to the jury lies in the contention that "mental competence" is a greater standard to overcome than mere soundness of mind or testamentary capacity. As pointed out on several occasions above, the burden of proving capacity was not upon the appellants, but was upon the proponents of the will. In fact, the court clearly pointed out this fact to the jury in its instruction No. 18. Consequently, the parties that would have been prejudiced by the imposition of a greater standard of proof, such as the appellants claim has occurred here, would be the proponents, the parties bearing the burden of persuasion. The appellants were not prejudiced by the error in this instance.

Finally, the appellants claim that the trial court erred in instructing the jury on one point and in failing to instruct the jury on three other points. We have long held that "It is the duty of the trial court to instruct the jury upon the issues presented by the pleadings and the evidence." *High-Plains Cooperative Assn. v. Stevens,* 204 Neb. 664, 669-70, 284 N.W.2d 846, 850 (1979). In this instance, the appellants claim that it was error not to give the jury the following instruction: "Unjust, unreasonable, or unnatural provisions of a will are matters for consideration in determining soundness of mind or testamentary capacity." Although authority supporting such an instruction does exist, it has arisen generally in instances wherein the decedent's purported last will substantially ignored sons or daughters when making bequests, or in which preference was given to distant relatives over heirs at law or other more closely related persons. See, *In re Estate of Gunderman,* 102 Neb. 590, 168 N.W. 359 (1918); *In re Estate of Kerr,* 117 Neb. 630, 222 N.W. 63 (1928); *In re Estate of Alexander,* 128 Neb. 334, 258 N.W. 655 (1935); *In re Estate of Bose,* 136 Neb. 156, 285 N.W. 319 (1939); and *In re Estate of Wahl,* 151 Neb. 812, 39 N.W.2d 783 (1949). At no time has such language been used when nephews and nieces of the decedent have been left substantial bequests, with the residue of the estate being left to a nonrelated party, such as a church. It is difficult to imagine such a bequest as being unjust, unreasonable, or unnatural in light of the fact that we have repeatedly said that a testator may dispose of his property as he pleases and need not recognize his relatives with bequests of any sort. *In re Estate of Bose, supra; In re Estate of Wahl, supra; Urbanovsky v. Foral,* 191 Neb. 308, 215 N.W.2d 74 (1974). Consequently, it was not error for the court to refuse the instruction in this instance.

The appellants also contest the court's refusal to give instructions regarding the decedent's alleged

"insane delusions," which they contend affected the decedent's testamentary capacity and prejudiced the decedent against certain of the contestants. We have stated that one form of an insane delusion is " 'a dislike for natural objects of testator's bounty, or repulsion for them, often based on an erroneous belief that such persons have been guilty of misconduct. If this belief is not based on evidence and can not be removed by evidence, it may amount to an insane delusion.' " *In re Estate of Wahl, supra* at 824, 39 N.W.2d at 790. The only evidence that the decedent was prejudiced against his heirs by any delusions was a statement he once made to the effect that his family "hadn't done too much for him." While it is apparent from the record that his nieces and nephews did indeed do much for the decedent, that one mere statement made by the decedent is insufficient evidence that the decedent suffered from an insane delusion which gave rise to a dislike or repulsion for his family.

The appellants also contend that an "insane delusion" instruction was proper in light of the substantial amount of evidence offered to show that the decedent believed he was going "crazy" or insane. In this respect, we have held that "the question to be determined is whether he [the decedent] was the victim of such delusions as controlled his actions and rendered him insensible to the ties of blood and kindred." *In re Estate of Wahl, supra* at 824, 39 N.W.2d at 790. In this instance the jury was instructed to consider any such circumstances as delusions, infirmities of mind, etc., along with all other evidence in the case, in reaching a decision as to whether the decedent possessed testamentary capacity at the time he executed the will in question. Consequently, we cannot conclude that the appellants were prejudiced by the failure to instruct the jury as to insane delusions, even were we to find such a failure to be error.

Finally, the appellants object to the court instructing the jury that the disposition under the will "need not be reasonable or conventional or judicious." We have held in the past that the right to dispose of property by will "is in no manner based upon its judicious exercise," and that a testator "may be unjust to his children or other relatives" so long as he has the requisite mental capacity to execute a will and has not been subjected to any undue influence. *Benge v. Sutton,* 169 Neb. 769, 781, 100 N.W.2d 857, 864 (1960). We continue to adhere to such rules, and therefore fail to find that the appellants were prejudiced by the instruction objected to. The trial court met its duty to instruct the jury on the issues presented by the pleadings and evidence, and we find no reversible error.

The judgment of the District Court admitting the will to probate is affirmed.

AFFIRMED.